21  737
77  256
21  737
78  30

## WILLIAM VARDEMAN v. H. H. EDWARDS.

An application for a new trial, whether made during the Term, or by petition after it, is, under our practice, governed by the same principles in the one case as the other; only with this qualification, that as the rule of law requires that the application be made during the Term at which the verdict is rendered, if this be not done the party must show an equitable excuse, to entitle him to a hearing of his application after the Term.

To entitle him to a hearing of such application, the party making it must show, that from circumstances not attributable to his own neglect or fault, nor within his control, he did not have it in his power to apply for a new trial, and to enforce his application before the Court that tried the cause.

In general, where it would have been proper for a Court of law to have granted a new trial, if the application had been made while the Court had power to do so, a Court of Chancery will afford its aid and grant it, if the application be made upon grounds arising after the Court of law ceased to have power to act.

To render newly discovered evidence good ground for granting a new trial, two things are essential.  1. It must have been newly discovered, and such as the party could not by any reasonable degree of diligence have obtained before the trial.  2d. It must be such as would warrant a different verdict on another trial.

A party will always be charged with knowing whatever, by the diligent use of what he admits he knows, and of the means in his power, he ought to have known.

One cannot be heard to say that evidence is newly discovered, which he was bound to know was a record in a public office, at all times accessible upon proper application, without at least showing some special circumstances and reasons why it could not be found and procured.

See this case as to the possession necessary to bar an action or to raise the presumption of a grant.

A Court of Chancery will not interfere to set aside a judgment rendered by a Court of law, except where the defendant has a good defence, of which he was ignorant, or where he was prevented from making it, by fraud or accident, or the act of the other party, unmixed with negligence or fault on his part.

Appeal from Nacogdoches. Tried below before Hon. A. W. O. Hicks.

Appellee recovered a judgment against appellant in the District Court of Rusk county at the Spring Term, 1851, in trespass to try title for the possession of a tract of land, in which suit appellant (defendant) had regularly filed his answer, setting up, among other things, title under the headright of Arthur Willis. The cause had been continued one Term before the trial. The recovery of appellee was by virtue of a patent upon a Texas headright certificate of the first class.

Appellant, on the 12th June, 1851, filed his petition in the same Court, praying for and obtaining a writ of injunction to restrain appellee from the execution of his writ of possession decreed him in the former suit, and praying for a new trial of the same.

Appellant sets up in his petition, that he held the land in controversy under Arthur Willis, for whom the same had been surveyed upon a concession made by G. W. Smythe, Commissioner in 1835, and that said Commissioner had in the same year made out a patent for said land to Willis, but had "retained said patent for the purpose of having the same translated into English, the same being in the Castilian."

The ground of excuse or diligence upon which appellant, in his petition, asked the Court to set aside the judgment complained of and grant him a new trial is, that he was present in the early part of the trial Term, having employed counsel, who had answered for him at a previous Term, and that they (his counsel) then told him he could go home, as they would continue the cause on account of the absence of material witnesses; that he did go home, and was very much surprised to hear after Court that the judgment had been rendered against him.

On the 24th of May, 1853, appellant filed an amended petition, and on the 5th of May, 1856, on the 5th of November, 1856, and on the 5th February, 1857, he filed others: in the

first of which he states, that after many searches in the General Land Office he had newly discovered parts, and in the latter that he had so found the whole of the Willis title certified to have been among the unfinished business of Geo. W. Smyth, Coahuila Texian Commissioner. When found, it turns out to be an unfinished title of that Commissioner, in usual form, to Willis, for a league and labor of land, dated in September, 1835, but without the signature of the Commissioner or assisting witnesses ; with blanks, however, for both. The translators and Commissioner do not certify that this document appears to be in any way torn, mutilated or defaced by time or otherwise, but they present it as an entire paper with full spaces for the signatures of the Commissioner and assisting witnesses, and they certify that it is filed " in the General Land Office among the unfinished business of George W. Smyth, Commissioner." A record from the General Land Office shows that on the 5th July, 1838, a certificate was issued by the Board of Land Commissioners of San Augustine county to Arthur Willis for a league and labor of land, and that on the 12th August, 1850, it was surveyed in the county of Shelby for K. L. Anderson.

The several petitions of appellant were met by exceptions and motions to dissolve the injunction and dimiss the suit on the part of appellee, which prevailed at February Term, 1857, and the plaintiff appealed, assigning for error the dismissal of his suit and the dissolution of the injunction.

*Parsons & Casey*, for appellant.

*T. J. Jennings* and *Geo. F. Moore*, for appellee.

WHEELER, J. The principles which govern the granting of new trials, upon application by petition after the Term, are the same in our practice as those which govern similar appli-

cations made during the Term. We have no bills of review, strictly and technically speaking, (Mussina v. Moore, 13 Tex. R. 7, 8 ;) nor original bills in Chancery, for the granting of new trials at law ; for having no Court of Chancery, as distinct from a Court of law, we have no occasion to resort to the modes of proceeding, or adopt the practice of the Court of Chancery. The application, whether made before or after the Term, is addressed to the same Court, having cognizance of both legal and equitable causes ; and there can be no reason why it should not be governed by precisely the same principles in the one case as the other ; only with this qualification, that as the rule of law requires that the application be made during the Term at which the verdict is rendered, if this be not done, the party must show an equitable excuse to entitle him to a hearing of his application after the Term. (Caperton v. Wanslow, 18 Tex. R. 125 ; 17 Id. 107 ; 12 Id. 181.) In that case the same reasons apply, and therefore the rule is the same as that which govern a Court of Chancery in entertaining an application by bill to compel the successful party to submit to a new trial at law ; that is, where the party making the application, from circumstances not attributable to his own neglect or fault, nor within his control, did not have it in his power to apply for a new trial, and to enforce his application before the Court that tried the cause. (2 Bibb. 241 ; 1 Johns. Ch. R. 432 ; 6 Johns. Ch. R. 479 ; 2 Story's Eq. 173.) In general, where it would have been proper for a Court of law to have granted a new trial, if the application had been made while the Court had power to do so, the Court of Chancery will afford its aid and grant it, if the application be made upon grounds arising after the Court of law ceased to have power to act. (1 A. R. Marsh. 237.) And, in general, the Court will be governed by the same principles in passing upon the merits of the application by which the Court of law would have been governed. Anciently, Courts of law did not grant new trial, which gave occasion for the interference of the Court

Vardeman v. Edwards.

of Chancery, to compel the successful party to submit to a new trial when juustice required it ; and the Chancery jurisdiction was so frequently called into exercise, that, from necessity, Courts of Common Law were compelled to assume the same authority ; and they now exercise the power to the fullest extent, and upon the same liberal and equitable principles which govern Courts of equity. The consequence is, that the latter Courts now rarely interfere, and never where, in the Court of Common Law, the party had it in his power to make his application and failed to avail himself of it. But although both Courts are governed, in passing upon the merits of the application, by the same equitable principles, their modes of proceeding are different, owing to the difference of their organization and forms of procedure. But, as in our Courts no such differences exist, the application ought to conform to the same rules and essential requisites in the one case as the other. If it be necessary to support the application by other evidence than the mere oath of the party in the one case, it should be so in the other. This is certainly as necessary, on principle, where the application is not made until after the Term has passed by, as where it is made during the Term ; and so the practice has sometimes been. (12 Tex. R. 186 ; Burnley v. Rice, 20 Tex. R. —.) Tried by this rule the present application is manifestly insufficient. But it was not opposed or objected to on this ground ; and as the exceptions may be taken as an admission of the truth of the petition, as in ordinary cases, it will be proper to consider its sufficiency to entitle the party to a new trial.

The ground taken in the original petition ; that is, that of misinformation or negligence of the attorney, has been abandoned, and very properly ; for it manifestly afforded the party no ground of relief. (3 Ala. R. 521 ; 3 Bibb. 80 ; 1 J. J. Marsh. 470.) The ground now relied on, as set up in the amended petition, is newly discovered evidence, of which the party could not avail himself on the trial. To render this a

good ground for granting a new trial, two things are essential: 1st. It must have been newly discovered, and such as the party could not by any reasonable degree of diligence have obtained before the trial ; and 2d. It must be such as would warrant a different verdict upon another trial. Is this the case presented by the petition?

It is to be observed that, in his original petition, the petitioner shows that he had full knowledge of all the facts in which his alleged right and title consisted ; and he says he had witnesses subpœnaed by whom he could have proved them. He makes no mention of the loss of any of the paper evidences of his title, or of his having made any search for them, or his inability to produce them ; no complaint of any want of time to prepare, or want of preparedness for trial, except the absence of his witnesses. He states the facts, in which he now claims that his right consists, and says he had witnesses subpœnaed by whom, if present, he could have proved them. Their absence, and the failure of his attornies to obtain a continuance of the cause, was the only matter of complaint. And it was not until more than two years after the rendition of the judgment, when, had the Statute been pleaded, his application would seem to have been barred, (Hart. Dig. Art. 783,) that it appears to have occurred to him to set up this ground of newly discovered evidence ; suggested, it seems, by certain exhibits appended by the defendant to his answer, for the purpose of showing that no title was ever issued to the alleged grantee, under whom the plaintiff claims. A year and a half after these exhibits were filed, he filed his amended petition, claiming, for the first time, to have discovered new evidence of his title, for which he had made diligent search in the General Land Office and elsewhere before the trial, and professing the utmost diligence since he had been led by the answer of the defendant to the discovery of the evidence. When thus apprised of the place of deposit of the new evidence, it is surprising that it should have required so long a time, with so

much industry, to have found it.   The plaintiff's averments in his original and amended petitions do not appear to present a probable or quite consistent narration.   And, without dwelling to comment, it may suffice to say, it seems difficult to resist the conviction that this matter of the discovery of new evidence is an after-thought, the 'creation of newly developed legal views of the case.

But in what does the new evidence consist?   In the incipient steps taken towards obtaining a title, which was never completed; but which remained at the closing of the Land Offices by the Act of the Consultation or Provincial Government among the unfinished business of the Commissioner, George W. Smyth ; and which, on the opening of the General Land Office, was required, by law, to be deposited, and is found deposited in that office.   Can the plaintiff claim, as to this evidence, a new discovery at the date of the filing of his amended petition in 1853 ?   We think clearly not.  His original petition shows that he well knew that it had existed, and its character ; and he was bound to know its place of deposit and custody.   If he really supposed the title had been completed, but retained by the Commissioner for the purpose of being translated into English, there was the better reason to expect to find it in the place appointed for its legal custody.

A party cannot be bound to say that evidence is newly discovered which he was bound to know was a record in a public office, at all times accessible upon proper application, without at least showing some special circumstances and reasons why it could not be found or procured.   From the very nature of the evidence, being documentary and matter of record in a public office, it could not be newly discovered.

It has been well said by counsel for the appellee, that a party will always be charged with knowing whatever, by the diligent use of what he admits he knew, and of the means in his power, he ought to have known.   And it cannot, we think, be doubted that, from what the party here appears to have

known for a period of many years before the trial, he ought to have known that the evidence in question was to be found precisely where, on inquiry, he found it. It cannot, therefore, be said to have been newly discovered, within the meaning of the rule. But if it were otherwise, it would not entitle the party to a new trial; for the reason, that it would not authorise a different verdict from that rendered upon the former trial. It constituted no evidence of title. It is evident from the face of the papers that the title was never completed. The final title was never executed by the Commissioner. And if this patent defect were not conclusive of the fact that the title was not completed, that conclusion is strengthened by the consideration that the document was found to have been retained and returned to the General Land Office by the Commissioner as a part of the unfinished business of his office. It is quite too clear for controversy, that it was not a title, or the evidence of title. But it is insisted that the survey would have aided the defence, by showing the boundaries and extent of the claim under which this party had been in possession a sufficient length of time to warrant the presumption of a grant.

Waiving the question whether the possession, if continued from its commencement to the bringing of the suit, had been of sufficient duration to bar the government or raise the presumption of a grant, (Morris v. Byers, 14 Tex. R. 279, 285 ; Hart. Dig., Art. 2393 ;) or whether the defendant in the former suit could avail himself of any possession under his plea of the Statute anterior to the period of the plaintiff's location, (Smith v. Garza, 15 Tex. R. 150,) let us see whether the alleged possession was continuous for any period sufficient to raise the presumption of a grant, bar an action, unless held under title or color of title, or a deed duly registered, neither of which is shown. It is alleged that this party went into possession in 1836, and that he remained in possession until in 1839 ; that he left in consequence of Indian hostilities, and did not return to the land until in 1846. He does not state

how long the Indian disturbances continued; but he states that other persons were residing there in 1840 or 1841, and the fair inference is that this impediment to his return did not continue much later. How then does he account for his absence from 1841 until in 1846, consistently with a continued possession? He states (Record, p. 117, 118,) that Willis, the original grantee, went into possession in 1840 or 1841, and resided on the land, cultivating it, until the time of his death; when that occurred is not stated; and that his widow remained in possession for about two years thereafter, and that about the time she moved away from the land, one Henson took possession and held for the petitioner until his return in 1846. It is averred, (Record, p. 3,) that Willis sold the land to Wiles, who sold one half of it to the petitioner in 1836. Willis, then, had divested himself of all right before the plaintiff's alleged right and possession commenced; it is not averred that he took or held possession under, for, or in right of the petitioner; and it is plain therefore that his possession, and that of his widow, cannot enure to the benefit of the petitioner. And the possession must, from the party's own statements, have been suffered by him to remain vacant for at least two, or three, or more years. This, we think, was such interruption of his possession as must repel any presumption of a grant, which might otherwise have arisen, and defeat his supposed title by limitation or prescription. The petitioner has therefore failed in both the essential requisites, we have noticed, to show himself entitled to the relief sought. Neither a Court of law nor a Court of equity would grant a new trial in such a case, though the application were supported by other evidence than the oath of the party; or the allegations of the complainant were admitted by a demurrer. It is the well settled doctrine that a Court of Chancery will not interfere to set aside a judgment rendered by a Court of law, except where the defendant has a good defense, of which he was ignorant, or where he was prevented from making it by fraud or acci-

dent, or the act of the other party, unmixed with negligence or fault on his part. (10 Sm. & Marsh. 98; 13 Id. 698; 1 Tex. R. 42; 1 Johns. Ch. 94; 2 Caines, 155; 6 Monroe, 145; 3 Gr. & W. on N. Trials, Ch. 17, and cases cited.)

We are of opinion that the Court did not err in refusing the application and dismissing the petition, and the judgment is affirmed.

Judgment affirmed.