F. METZGER v. C. F. WENDLER AND ANOTHER.

1. As we have in this State no separate and distinct law and chancery courts, the rules of practice in those courts where the law and equity jurisdictions are distinct and separate cannot always be applicable to our courts.

2. In the courts of this State, an application for a new trial is governed by the same principles when made during the term as when made subsequent thereto ; and therefore when an application has been made during the term, and the judgment of the court upon it has been rendered, the questions involved are *res adjudicata*, and after the adjournment of the term the court has no power to reconsider its judgment, unless it is impeached as a nullity.

3. Plaintiff filed in the district court his bill for a new trial, and therein set forth, in substance, that he had previously sued the defendants in the same court on promissory notes given in October, 1861, for merchandise; that the defendants pleaded numerous fictitious pleas, and upon them obtained continuances by false affidavits, but on the immediate eve of the trial, and in the absence of the plaintiff, they filed for the first time the defense that the notes were payable in Confederate money, which defense was wholly false and untrue ; that defendants procured two witnesses to swear falsely in support of such Confederate money defense, and plaintiff's counsel, having no reason to anticipate such defense or false testimony, was taken by surprise thereby, and was unable to countervail it ; that the verdict and judgment went against plaintiff on that defense, and in consequence of plaintiff's absence, his counsel could not have his information and assistance in preparing a proper motion for a new trial, and his motion therefor was overruled; that plaintiff lived on the frontier, and his constant presence at home was necessary to the protection of his wife and home from the Indians, and he had no reason to anticipate such a false defense would be set up by the defendants; that since the trial he had discovered the original contract and invoices by which the amounts of the notes were fixed, and also sundry witnesses, by whom and which he could show that the notes were payable in lawful money, but which evidence was not adduced by him on the former trial for reasons already indicated. In support of his bill the plaintiff filed the written evidences referred to in it, and also the affidavits of sundry witnesses, negativing the defense of Confederate money. The defendants' demurrer to the bill was sustained by the court below. *Held*, that the demurrer was properly sustained. The plaintiff should have made his showing upon his motion for a new trial in the original suit.

4. A new trial will not be granted on the ground of newly discovered evidence, when the object of such evidence is to impeach the testimony of a witness.

5. Plaintiff sued on notes, but judgment was rendered against him. After the term elapsed he filed his bill for a new trial, on the ground of newly discovered evidence, and fraud ; but his bill was dismissed.

on demurrer. He now bring up both judgments by writs of error to this court. *Held*, that such practice is unprecedented, and will not be countenanced.

ERROR from Kendall. Tried below before the Hon. George H. Noonan.

This cause was a proceeding for a new trial in the case which immediately precedes it in this volume. The day on which this petition was filed is not noted in the transcript, but the citations to the defendants were issued on the tenth of January, 1870.

The allegations of the petition were very full and specific. The third head-note, however, is believed to give a fair abstract of the most material of them ; and the rulings of this court do not seem to require anything more. A perusal of the preceding case between the same parties will cast much light upon the present one.

The defendants excepted to the petition, on the ground that the matters complained of were already adjudicated in the original cause, and that the only remedy of the plaintiff was by appeal or writ of error therein.

The case came to trial upon the exceptions at the June Term, 1870, when they were sustained, and the plaintiff's petition was dismissed. This judgment is now brought up by writ of error.

*W. B. Leigh*, for the plaintiff in error.—The proposition that the court erred in sustaining defendants' exceptions to plaintiff's petition for a new trial seems to be self-evident. The plaintiff had no other cause of complaint than the fact that there had been a suit, and a verdict and judgment against him. *Res adjudicata*, or not, was not the question, nor could it be on demurrer, being a question of fact. Defendants' demurrer and

exceptions should have been directed to the question, "has the plaintiff shown good reason for a new trial of the original cause?" If defendants thought the plaintiff fell short of the requirements, their exceptions should have pointed out the defects. They failed to do so, yet the court sustained defendants' plea, evidently under the belief that however great the wrongs, however false the judgment and verdict, it could afford no relief; that the appellate court was the only tribunal to vindicate the cause of justice. Numerous decisions have beyond doubt conceded the right claimed by plaintiff for the district court. Testing the petition for a new trial, with exhibits and amendments and affidavits belonging to the same, by the rules laid down in Vardeman v. Edwards, p. 737, 21 Texas R., or in Spencer v. Kinnard, p. 180, 12 Texas R., and in numerous other cases, we think it will be found to be in compliance with the law. The facts alleged by plaintiff, the facts stated in the affidavits, have not been traversed or denied, or even been modified by the defendants. Even a cursory reading of the record convinces the mind that those promissory notes were not payable in Confederate money; that that currency was not mentioned, because, for the parties, it did not then exist; that no special currency was mentioned at all, because the occasion for the distinction between lawful money and Confederate currency had not yet arisen. Is it probable that the cautious, loyal German, distrustful of everything that emanated from the Confederacy, stipulated in October, 1861, that those promissory notes, payable from one to two years hence, should be paid in Confederate treasury notes,—a currency of which he had not seen a single specimen as yet, and issued by a revolutionary government, whose downfall he daily expected? Be it remembered that martial law was not

declared in San Antonio until about May, 1862, and that the chief object of the measure was to give a forced currency to the Confederate money. It was barely possible that the defendants' plea of "Confederate money" could be true, and that is the most·that can be said of it. If there had been some real substance to defendants' plea, it would indeed have been easier to disprove it.

The province of demurrers and exceptions is to point out mistakes in the adversary's pleadings, so that he may, if he choose, amend them.

We think the record shows that the application for a new trial contained all the requisites of such an action. The case of Dean v. Border, 15 Texas R., p. 300, presents some analogous features. The plaintiff has rendered ample and sufficient excuses for his failure to do in term time what he has done after the term. Can it be asked of a suitor, conscious of his right, that he must suspect his adversaries of criminal fraud—that he must prepare to disprove that which he knows cannot truthfully be established ? A number of continuances had been applied for by the defendants, based on a variety of grounds for the absence of various witnesses. The very trial at which defendants gained the verdict was sought to be postponed by them, not on account of the absence of either Nickel or Schwarz, but for some other reason. Was it not excusable, at least, if the plaintiff, under such circumstances, did not suspect the perpetration of a fraud on the part of defendants, and judged their efforts more mildly, deeming their object to be merely a continuance of the case ? How can we guard against absolute falsehood ? Relief has been granted in cases of negligence (see margin, p. 178, Vol. 1, Graham and Waterman on New Trials); how much more, then, is the plaintiff entitled to it ?

In case of honest mistakes by party or counsel, new trials were granted. (See marg. pp. 180, 182, etc., Vol. 1, Graham & Waterman on New Trials.) If the plaintiff's personal absence from the first trial be urged as an objection, we refer to marg. pp. 161, 162, Vol. 1, Graham & Waterman.

In support of our view that a new trial should have been granted, we refer to marg. pp. 169, 54, 56, 57, 60, 170 (case of Thurtell v. Beaumont), 172 (Sargent v. Deniston), 173 (Peterson v. Barry), 371, 374 (Norris v. Freeman), 573 of Vol. 1, Graham & Waterman on New Trials. Also, to Vol. 3 of same work, p. 994, where a verdict was probably obtained by perjury. As to general principles, Id., pp. 1008–1014.

It is with a great degree of satisfaction that from all those authorities we draw the conclusion that courts will not allow a detected fraud to prevail against a patent right.

No brief for the defendants in error has reached the hands of the Reporter.

OGDEN, J.—September, 1868, the plaintiff in error brought suit in the district court on two promissory notes, bearing date October, 1861, and on the trial of the cause the defendants proved that the notes were given for, and by verbal agreement were payable in, Confederate money. The cause was submitted to a jury under proper instructions from the court, and verdict and judgment were rendered for the defendants. A motion for new trial was made and overruled, and the cause was brought here by a writ of error.

Subsequently the plaintiff below filed another petition in the district court, setting up substantially the same facts as in the original petition, together with the

trial and judgment on the same, and the rulings of the court on the motion for a new trial, as well as other facts relating to the merits of his cause, and the further fact that since the trial of the original cause he has discovered new evidence to sustain his demand.   He also charges fraud on the part of the defendants, and perjury or false swearing on the part of the witnesses for defendants, and prayed for an injunction to stay the enforcement of the original judgment, for a new trial in the cause, and for judgment, etc.   To this last petition the defendants demurred, and the court sustaining the demurrer, the cause was dismissed.   Another motion for a new trial was made, and overruled by the court, and the plaintiff gave notice of an appeal, and that cause is here on a writ of error.   We now have two distinct writs of error, and two separate causes before us, from two separate and distinct judgments of the district court upon the same cause of action, and for the purpose of enforcing the same demand.   This certainly is a novelty in the practice in this State, if it would not be considered so in any other.   This last suit was undoubtedly instituted as a bill of review, or as an original bill in chancery, for the purpose of obtaining a new trial in the original suit.   As we have in this State no separate and distinct law and chancery courts, the rules of practice in those courts, where they are separate, cannot always be applicable to our courts.   Originally courts at law had no authority to grant new trials, and the party aggrieved was then compelled to seek relief through the courts of equity.   But when the courts at law exercised the prerogative of granting new trials, then courts of equity would seldom interfere, and only in cases of fraud or great injustice, and never unless the party applying for relief showed most clearly that he had exhausted his remedies at law, or gave a good and

equitable reason for his failure so to do. The cases are, therefore, exceedingly rare, where a court of equity has granted a new trial after an application for that purpose had been made to and refused by a court at law.

But under our practice, where the law and equity jurisdictions are united, it is difficult to discover any reason why the same court, exercising equity powers, should grant a new trial after it had once refused to do so for the same cause. In the cause of Vardeman v. Edwards, 21 Texas, 740, the court says: "The application, whether made before or after the term, is addressed to the same court, having cognizance of both legal and equitable causes; and there can be no reason why it should not be governed by precisely the same principles in the one case as the other." If, therefore, the court is to be governed by the same principles, whether the application be made in term or after it, then, where the application is made in term and the judgment of the court is had, that judgment becomes a finality, and the questions settled are *res adjudicata*, and the court, after the adjournment of the term, has no authority to reconsider that judgment, unless the same is impeached as a nullity. "Indeed, a court of chancery will not order a new trial of an action at law when application for a new trial has been made to the court of law and refused; the party's remedy in that case being by bill of exceptions and a writ of error." (Graham & Waterman on New Trials, 1463.) And in the case at bar we have no hesitancy in deciding that, as the plaintiff in error had once prosecuted his suit to judgment, and had made a motion for a new trial which had been overruled, his only remedy was by bill of exceptions and appeal, or writ of error; and that the court below did not err in sustaining a demurrer to an original suit for the purpose of obtaining a new trial.

25—xxxv

In this cause the plaintiff in error complains of the great injustice of the judgment in the original suit, and charges that the judgment was obtained by the false swearing of certain witnesses, and now applies for a new trial that he may discredit the testimony given on the former trial, and impeach the witnesses who then testified. But in Scranton v. Tilley, 16 Texas, 193, Justice Wheeler, delivering the opinion of the court, says : "A new trial, it has been said, is rarely if ever granted on account of newly discovered evidence, if the only object of the evidence be to impeach the credit of a witness." And in Graham & Waterman on New Trials, it is said : "An injunction will not be allowed to stay proceedings and judgment, on the ground that the witness had committed perjury at the trial; that a party had been prevented from attending the trial by public business, and that a new trial had been refused." (Smith v. Lowry, 3 Monroe, 420 ; 2 Denio, 109 ; 11 Barbour, 215.) The conclusion is therefore inevitable, that in this case the plaintiff in error is not entitled to the relief sought, even against false swearing; that the time to present that complaint had passed ; and if now he has to suffer in consequence of the mistaken or false testimony of others, he certainly is chargeable with a fault in not prosecuting his rights at the proper time, with the necessary skill and vigor. And the practice of prosecuting two suits in the same court of original jurisdiction, at the same time, for the same demand, and by an appeal or writ of error bringing both causes to this court for determination, is a practice too absurd to meet with encouragement at our hands.

The judgment of the district court is therefore affirmed in all things.

AFFIRMED.