## R. T. BRYORLY V. JOHN H. CLARK.

1. BILL FOR NEW TRIAL.—It has long been settled, that a bill for a new trial must show sufficient matter to have entitled the party to a new trial, if applied for during the term, and a sufficient legal excuse for not having then made his application.

2. SAME—PRACTICE.—It seems clear, on principle and authority, that if it were still in a party's power to move for a new trial in the court that tried the cause, he could only be justified, if at all, in resorting to a separate suit, in the nature of a bill in equity, by showing that under the circumstances the remedy by motion was inadequate or uncertain.

3. SECOND MOTION FOR NEW TRIAL—PRACTICE.—The judgments of a court are under its control during the term at which rendered, and a second motion for new trial may be allowed. That one motion for a new trial has been overruled, is not a sufficient reason for resorting to a new suit, instead of filing a second motion, setting up the same matters relied on in such new suit.

4. PAROL AGREEMENT.—Such agreement, to set a case for a future day of the term, if violated by plaintiff, by pressing a trial when the case is reached, and before the day set, does not, of itself, present ground for new trial.

5. FACT CASE.—Where exhibits, annexed to a petition for a new trial, conflict with the general charges in the petition relied on as ground for the action of the court, a disregard of such general charges by the court below is no ground for reversal on appeal.

6. PRACTICE—JUDGMENTS UNDER CONTROL DURING TERM.—The District Court may reconsider its ruling dismissing a petition, and may overrule exceptions thereto, in whole or in part; and the plaintiff in the bill has no cause of complaint, unless special injury resulted, which should be shown by bill of exceptions.

APPEAL from Red River. Tried below before the Hon. Joseph Bledsoe.

John H. Clark sued Bryorly, at June Term, 1875, of the District Court of Red River county, on a contract between the parties, in which Clark sold to Bryorly 183,113 feet of lumber, at prices therein stated. Service of citation was had. Defendant employed counsel, and a general demurrer and general denial was pleaded.

It was insisted, by defendant, that, by verbal agreement be-

tween plaintiff and the counsel for defendant, it was agreed that the case should not be called before June 24, 1875. The defendant thereupon, being unwell, returned home, and his attorney went to another court on professional business. June 14, in absence of defendant and his attorney, an *ex-parte* trial was had, and judgment rendered for plaintiff for $1,800.

The defendant, on hearing of the judgment, went to the county-seat on the 15th of June, and made a motion for a new trial, on the grounds—1. That on the day of trial defendant was, from illness, unable to be in attendance upon the court. 2. Because his attorney, W. B. Wright, Esq., was absent, and his presence was material. Defendant had been informed by his counsel that some definite day for the trial of said cause would be fixed and set by the court, and that he believed his attorney was absent from mistake or misapprehension. 3. That defendant had a meritorious defense (setting it up).

The motion for new trial was overruled.

June 21, 1875, Clark made affidavit that Bryorly was "about to remove his property from the county of Red River before the rising of the District Court, then in session." Whereupon execution was issued, and at once levied upon a stock of merchandise of Bryorly's.

June 29, 1875, Bryorly presented his petition to the judge then presiding, Hon. J. C. Easton, asking an injunction restraining the sheriff from selling under the execution, &c., and asking that the judgment be set aside, and a new trial granted; which injunction was granted and issued. The District Court was still in session. The petition set out, in detail, a history of the proceedings, and alleged that the judgment had been obtained by fraud; that plaintiff had made a parol agreement with the attorney of defendant that the case should be set for trial June 24, and that upon said agreement the defendant and his counsel were absent;

and that plaintiff, taking advantage of their absence, so induced, pressed the case to trial, and obtained judgment.

It was further charged, that but a small sum was in fact owing to plaintiff. The general outlines of the testimony, touching the state of accounts between the parties, are given in the opinion, sufficiently to be understood.

The petition also stated: " 1. Said defendant Clark well knew that petitioner, on fair settlement, owed him but the amount heretofore stated ($290). 2. That said judgment was procured through fraud and treachery. 3. That the grounds stated in the affidavit for the issue of the execution were entirely false, and that there was no foundation for the statement."

The petition also set out special damage from the levy of the execution, and asked damages.

The defendant answered, and denied particularly all the material allegations in the petition. The judge granting the injunction refused to dissolve it; motion to dissolve having been heard in chambers on November 13, 1875.

Subsequently, May 29, 1877, as appears by bill of exceptions in the record, on the trial of the cause the general demurrer was sustained to the petition, and suit dismissed. Following the signature of the judge to the bill of exceptions, is the note: " After signing the above exceptions, the judgment of the court was suspended, and the case taken under advisement, and the judgment shown by the record entered."

May 30, 1877, the judgment was entered of record, sustaining exceptions so far as the petition seeks a new trial of the matters adjudicated in the former suit, and vacating the former judgment, and overruling the exceptions " as to so much of the petition as sets up damages for causing said execution to be issued before the rising of the court at which judgment was rendered, and the injuries and damages caused by reason thereof." The judgment then proceeds: " And the plaintiff thereupon expressly declining to amend his pleadings, and refusing to further prosecute his suit in this

behalf, it is therefore ordered," &c., dissolving the injunction and dismissing the suit.

May 31, plaintiff filed motion for new trial, because of error in sustaining the demurrer and in dismissing the cause. On the same day, the motion was overruled, and plaintiff appealed.

*W. B. Wright,* for appellant.—This was a suit originally instituted by appellee, J. H. Clark, against R. T. Bryorly, appellant, in the District Court of Red River county, on a certain contract for lumber. Upon this contract, a judgment was obtained by said Clark through fraud and duplicity. Appellant Bryorly, at the same term of the court at which the judgment was rendered, filed a motion praying for a new trial, which motion was overruled by the court. Immediately after said motion was overruled, and during the same term of the court, and long before said adjournment of said court, Bryorly filed a petition, and obtained an injunction restraining the issuing of execution, and praying that said judgment be set aside, and a new trial be granted him, for the following reasons:

1st. That said judgment was obtained through fraud.

2d. That all that appellant Bryorly owed said Clark on settlement was the sum of $291.31.

The judge who granted the writ of injunction refused to dissolve it, on motion of Clark; but afterwards another judge, on demurrer and exceptions, dissolved the injunction and dismissed the petition. The exception most strongly urged, was, in substance, that Bryorly had made a motion for a new trial, which motion had been overruled, and therefore he could not be heard again. Mr. Freeman, in his work on Judgments, says: "The denial of a motion to open a judgment does not preclude a court of equity from subsequently granting the relief denied at law. The decision of such a motion is not such a *res adjudicata* as precludes equity from reëxamining

the question." (See Freeman on Judgments, 2d ed., sec. 511, page 509, and authorities there cited.)

Now, in the first place, was the judgment obtained by fraud? Clark had agreed with W. B. Wright, Bryorly's attorney, not to take up the case before a certain day of the term. Bryorly was sick, and went home under this agreement. But no sooner did Clark discover that Bryorly and Wright had left, than he took his judgment.

But the court below thought the agreement should have been in writing, to be effective and binding upon Clark. Mr. Freeman, however, in commenting upon the subject of taking judgments against agreements, says: "It makes no difference that the agreement is void, because made on Sunday, or was oral, when the rules of the court required all stipulations to be in writing. If it can be shown that it was successfully employed to prevent the defendant from making his defense, then the plaintiff will not be allowed to retain the advantage it has secured him." (Freeman on Judgments, 2d ed., sec. 492, and authorities there cited.) The exhibits to the petition show that Bryorly did not owe Clark over three hundred dollars, and yet he took a judgment against him for over eighteen hundred dollars. Certainly, the court will not allow such an outrage upon justice and right to be perpetrated, but will always interfere and grant relief. (Freeman on Judgments, sec. 486, 2d ed.; Spencer *v.* Kinnard, 12 Tex., 180.) The demurrer and exceptions admitted everything stated in the petition to be true, and thus the judgment of the court was rendered without regard, or giving any weight, to the answer of Clark whatever. And yet the petition claimed damages for maliciously and wantonly making an affidavit and causing an execution to issue before the rising of court under which the property of Bryorly was seized, greatly to his damage. On the 29th day of May, 1877, the demurrer and exceptions were sustained, and the cause dismissed from the docket, when the appellant Bryorly took a bill of exceptions to the action of the court, and there rested,

and, of course, thought his case was at an end, and left court. But, strange to say, after the bill of exceptions had been signed by the judge and filed, he makes a statement, at the bottom of the bill of exceptions, that he had suspended his judgment; and on same day he ordered a different judgment to be entered, from the one signed in his bill of exceptions, given to appellant Bryorly. This is certainly strange practice in a court of justice and law.

In view of all the facts in this case, I respectfully request the court to reverse the judgment rendered in this case, and send it back for a trial upon the merits, in accordance with the well-established principles of law and justice.

*Charles S. Todd,* for appellee.

I. The bill for injunction showed on its face that appellant had a full, adequate, and complete remedy at law; and therefore he could not claim the interposition of equity. (High on Inj., secs. 30, 46, 97, *et seq.;* Marine Ins. Co. *v.* Hodgson, 7 Cranch, 332; Smith *v.* Lowry, 1 Johns. Ch., 320; Borland *v.* Thornton, 12 Cal., 440; Bateman *v.* Willoe, 1 Sch. & Lef., 204.)

It is believed that the case of Goss *v.* McClaren, 17 Tex., 107, a leading decision of this court, is conclusive of this case. Appellant here, as in that case, relied on the statements of his attorney as his excuse for neglecting his legal rights; and this is insufficient.

Appellant's motion for a new trial in the original suit embodied all the material grounds set up in the bill, and his remedy was by appeal. He first resorted to his legal remedy, by filing said motion, and then deliberately abandoned it, and resorted to equity. (Prewitt *v.* Perry, 6 Tex., 262.)

Even if appellant had a good defense, he could not enjoin, unless he showed good cause why it was not interposed in the original suit, and why he did not prosecute his legal remedies; (Menifee *v.* Myers, 33 Tex., 691; Manning *v.* Hunt,

36 Tex., 118;) and must show that he could not have made his defense. (Ballard *v.* Rogers, Dallam, 460.)

II. The mere allegation, "that the judgment was obtained by fraud," is not sufficient. The facts relied on as constituting the fraud must be distinctly averred, and the court is to determine whether those facts sustain the charge. (Martin *v.* Sykes, 25 Tex. Supp., 198.)

The single isolated fact alleged as fraud, is that the judgment was in contravention of an understanding between appellee and appellant's counsel. If such an agreement was made, (taking the bill as true, for purposes of demurrer,) it was not in writing, nor sanctioned by the court, nor noted of record, and could not be regarded. The bill does not negative the possibility that the court might have compelled appellee to try or dismiss his case. If such were the case, the violation of the agreement was not fraud, and the allegations must negative the probability or possibility of fair conduct on the part of appellee.

It nowhere appears, from the bill, that appellant was prevented from prosecuting his appeal, or deprived of his legal remedy, by fraud. The mere fact of fraud, without showing that such fraud destroyed or rendered inadequate the legal remedy, will not entitle to injunction. If any fraud, mistake, surprise, or accident can be remedied or corrected at law, equity will not interfere. "*Æquitas*," says Grotius, " *est correctio ejus in quo lex deficit.*" (See Kent *v.* Ricards, 3 Md. Ch., 396.)

High, in his work on Injunctions, says: " The relief will not be granted because of fraud alone, but only where the person aggrieved shows a good reason why the defense was not made at law." It must appear that defendant was prevented from availing himself of his legal remedy " by the fraud, unmixed with negligence of his own." (High on Inj., sec. 109.)

III. Appellant urges that the court erred in dismissing the bill, because appellant had declared in damages for wrongfully procuring the issuance of execution. In reply to this,

we merely suggest, that as to that part of the bill the demurrer was overruled, and the bill was dismissed because the appellant "expressly declined to amend, and refused to further prosecute his suit." Appellant's bill was fatally defective, even in that part setting up damages, because he did not allege that appellee was insolvent; and unless such were the case, his remedy was perfect at law, without resorting to equity to restrain the collection of this judgment.

Injunction to restrain the collection of judgments for money is not a favorite jurisdiction of equity, and bills for this purpose are closely scrutinized and strictly construed. (High on Inj., sec. 85; Roebuck v. Harkins, 38 Geo., 174; Slack v. Wood, 9 Grat., 40; Bateman v. Willoe, supra.)

Gould, Associate Justice.—This was an original suit, to have a judgment set aside, on the ground that it was procured by the fraudulent violation of an oral agreement between counsel, not to take up the case before a certain day, and that the judgment thus obtained, for $1,811.68, was unjust, except the sum of $291.31.

The law has long been settled, that such applications must show sufficient matter to have entitled the party to a new trial, if applied for at the term, and a sufficient legal excuse for not having then made his application. (Cook v. De La Garza, 13 Tex., 444; Goss v. McClaren, 17 Tex., 107; Caperton v. Wanslow, 18 Tex., 132.)

"The application," says Justice Wheeler, "whether made before or after the term, is addressed to the same court, having cognizance of both legal and equitable causes; and there can be no reason why it should not be governed by precisely the same principle in the one case as the other, only with this qualification, that as the law requires that the application be made during the term at which the verdict is rendered, if this be not done, the party must show an equitable excuse, to entitle him to a hearing of his application after the term."

(Vardeman *v.* Edwards, 21 Tex., 740; Metzger *v.* Wendler, 35 Tex., 385.)

The present application is peculiar, in that it appears to have been made during the term; and the question is presented as to the right of a party to appeal to equity for a new trial, when the remedy by motion was still open, unless, at least, he states a sufficient excuse for failing to resort to the more simple and legal remedy. It seems clear, both on principle and authority, that if it were still in his power to move for a new trial in the court that tried the cause, he could only be justified, if at all, in resorting to a separate suit, in the nature of a bill in equity, by showing that under the circumstances the remedy by motion was inadequate or uncertain. (Vardeman *v.* Edwards, *supra,* and authorities cited.)

Such being the rule, the petition in this case was defective; for it does not attempt to show any excuse for not making a motion for new trial, embodying in it the same matter, unless, indeed, such excuse is to be found in the fact that a motion for new trial, setting up only a part of the same matters imperfectly, and unsupported save by the affidavit of the party, had, in fact, been made and overruled. We may, perhaps, infer, if in applications of this sort matters so important can be supplied by inference, that this motion was made hastily, without opportunity for conference with the counsel who had, it was claimed, agreed with Clark, the original plaintiff, and himself, as attorney, as to the time when the case should be taken up. If so, when that counsel returned, it was still open to him to make another motion. The judgments of the court are under its control during the term, and a second motion for a new trial may be allowed. (Puckett *v.* Reed, 37 Tex., 308; Wood *v.* Wheeler, 7 Tex., 16; Sweeney *v.* Jarvis, 6 Tex., 39.)

Instead of doing this, or showing any good reason for not doing it, the plaintiff applies, during the term, to the same judge before whom such a motion could have been heard, and obtains an injunction staying proceedings.

Had a motion for new trial been made, embodying in it the same matter and supported by like exhibits, the court, if satisfied therewith, might have set the judgment aside, and had the case retried, even during the term. If the court had refused, on proper showing, to grant such motion, though it were a second motion, the party had his legal remedy by appeal.

It is true, as contended by appellant, that equity may grant a new trial, after a motion for new trial has been overruled. But when the more direct remedy of a second or amended motion is equally available, there is no excuse for resorting to the circuitous remedy of a separate suit. The petition, as a petition for a new trial, fails to show a sufficient excuse for not having made the same showing by motion.

We have the less hesitation in affirming the judgment, because, whilst the petition abounds in positive averments of the injustice of the judgment, the exhibits filed do not substantiate the charge. The agreement originally sued on shows a purchase of 183,113 feet of lumber; yet, in his statement, Bryorly charges himself with only 130,334 feet, and gives no account whatever of the balance. Again, in the exhibit he charges himself with only 21,500 feet of merchantable lumber, and yet Clark is charged with having received on his orders 45,593 feet, reasonably worth $1.50 per hundred,—a price which would indicate that at least that amount was merchantable. Yet, again, the fair construction of the contract requires that Clark's orders for lumber be credited simply on the amount of lumber purchased, whereas they are charged to him at an advanced price. According to Bryorly's exhibits, Clark received on orders only 52,909 feet of lumber, and this, and $20 in cash, is all that he has received for the 183,113 feet of lumber. The exhibits fail to support the statement that the purchase amounted only to $1,073.25, or that the balance was anywhere in the neighborhood of the balance admitted. The appellant cannot com-

plain if his exhibits are accepted as more accurate than his wholesale statements.

Counsel for appellant seems to object that the court, after sustaining exceptions to the entire petition, reconsidered its ruling, and gave him an opportunity to prosecute his claim for damages. This was no more than the court had a right to do, and no more than was proper to be done. If the change in the ruling operated to his prejudice, he should have applied to the court on that ground for such relief as he wanted, or should have, at least, shown by bill of exceptions how it was that he was prejudiced. The criticism on the action of the court is uncalled for, and is expressed in terms which cannot be allowed to pass without notice.

The judgment is affirmed.

AFFIRMED.