## REYNOLDS v. VOLUNTEER STATE LIFE INS. CO. et al.
### No. 1367.

Court of Civil Appeals of Texas. Eastland.
Feb. 8, 1935.

Rehearing Denied March 8, 1935.

Lockhart & Brown, of Lubbock, for appellant.

Davidson, Doss & McMahon, of Abilene, for appellees.

LESLIE, Justice.

On January 12, 1931, the Volunteer State Life Insurance Company of Chattanooga, Tenn., a corporation, took judgment in the

Forty-Second district court of Taylor county, against J. G. Reynolds and others in cause No. 8723–A, for debt and foreclosure of deed of trust lien securing same on 215 acres of land owned by Reynolds. The present suit, instituted in the same court February 4, 1933, by Reynolds against said insurance company and others, "sought to have said judgment canceled and * * * the deed thereafter executed by the sheriff to the insurance company set aside as a cloud upon his title," etc. A trial was had before the court and jury, and at the conclusion of the testimony a verdict was instructed in favor of the defendants, and judgment entered accordingly. Reynolds appeals.

In substance, the suit arises out of the following facts: November 10, 1928, Reynolds procured a loan from the Southern Mortgage Company on said land, and executed promissory notes therefor aggregating the sum of $5,350, bearing interest at the rate of 6 per cent. per annum, etc. In addition; and as part of the same transaction, he executed interest notes aggregating $741, running for different periods of time. The first series of notes were secured by a first lien on the land, and the series of interest notes by second lien. The first series of notes and lien securing them were transferred by the Southern Mortgage Company to the Volunteer State Life Insurance Company, defendant herein, and the second series of interest notes, and the accompanying lien, were transferred to the Mortgage & Security Company, of which Guy Hopkins is receiver.

When Reynolds defaulted in the payment of note No. 1 of the first series, the life insurance company exercised its option, and declared all notes due, and instituted foreclosure proceedings December 18, 1930. It made J. G. Reynolds, his wife Bertie Reynolds, J. J. Chauncey, American Mortgage Corporation, and Guy Hopkins, receiver, defendants in that suit. It procured a judgment for debt and foreclosure, etc., on January 12, 1931. The judgment became final and the land was sold under an order of sale, and bid in by the life insurance company, which thereafter sold the land, by warranty deed, to H. P. Ragan who rented same for agricultural purposes to W. K. Van Storey.

As a basis for the instant suit, the plaintiff Reynolds alleges he was never served with citation in said cause No. 8723–A, never entered his appearance therein, nor in any way submitted himself to the jurisdiction of the court, and in the present proceedings he alleges a meritorious defense based upon a contract for usurious interest charged and collected under the terms of the original notes and deeds of trust foreclosed. The suit is prosecuted upon the theory that the original judgment is void and subject to the attack herein made. The general nature of the case will be further reflected by other essential facts stated in the progress of the opinion. The attorneys, Lockhart & Brown, representing the appellant in this litigation were in no way connected with the former litigation resulting in the judgment sought to be set aside by this proceeding.

■ Since the trial court instructed a verdict against the plaintiff, this court takes as true all testimony favorable to the plaintiff. This is elementary and in accordance with the appellant's first proposition. 3 Tex. Jur. § 741, p. 1049.

The gist of the appellant's main contention in his attack upon the judgment of the trial court is succinctly stated in the first sentence of the second proposition, wherein he asserts that: "A judgment rendered without appearance by the defendant, and without service of process upon him, is void, and will so be declared when attacked in a direct proceeding, within the period of limitation, and this is the rule although the judgment recites due service." This proposition is, of course, upon the theory that Reynolds was never served with process in the foreclosure suit, and never formally entered any appearance therein.

Since propositions 3 and 4 are closely related to the second, and all in a measure based on common facts, they will at this point be stated in substance and considered in connection with the second proposition. The third one is to the effect that a writ of error or appeal from the judgment of foreclosure in cause No. 8723–A was not available to Reynolds, since that judgment recited service of process upon him "and the officer's return showing there had been no service was not in the papers of the case." The fourth proposition asserts that since the judgment of foreclosure was void, Reynolds not having been served with process, he "was not required to file a motion for a new trial or to set aside the judgment in cause No. 8723–A at the term of court at which said judgment was rendered, even though he might have had notice of the rendition of said judgment prior to the expiration of the term of court."

In the consideration of the foregoing propositions, we think there is no controversy about the following facts: The judgment in favor of the insurance company in cause No. 8723–A established the indebtedness against

Reynolds, and foreclosed the deed of trust lien on his land. In that suit he was not served with any character of process, and he made no appearance in the case. That suit was filed December 18, 1930. The judgment against him was taken and entered January 12, 1931. It is regular in form and substance, and recites, among other matters, the following: "On this 12th day of January, 1931, came on to be heard the above entitled and numbered cause, and came the plaintiff and announced ready for trial, and came the defendant Guy Hopkins, receiver of Mortgage & Securities Company of New Orleans, La., a corporation, and filed his answer herein, and the defendant J. G. Reynolds and wife, Bertie Reynolds, J. J. Chauncey, and the American Mortgage Corporation, a corporation, although having been personally served with citations herein in the manner and form, and for the length of time required by law, came not, but wholly made default."

An order of sale, based on the judgment, issued January 29, 1931. It contained the usual recitals, stating that the judgment was rendered January 12, 1931. It reached the sheriff of Lubbock county, February 4, 1931, and on that date he made levy on the plaintiff's 215 acres of land. His return shows the property was advertised for sale March 3, 1931, at which time the land was bid in by the Volunteer State Life Insurance Company, an appellee herein. The notice of sale was published in a newpaper "The Lubbock Morning Avalanche" on February 5, 12, and 19, 1931. The regular January term of the district court of Taylor county, in which the judgment of foreclosure was obtained, convened January 5, 1931, and ended February 28, 1931. As noted, the sale took place on March 3, 1931. .

Soon after December 18, 1930, the date the foreclosure suit was filed, citation therein was served on Reynolds' wife, and from that he was made aware of the fact that the suit had been filed. Thereupon, he immediately "returned" to Abilene, Taylor county, Tex., to discuss the matter with one Holliday, the agent of the insurance company. At that time, January 2, 1931, said Holliday, in the interest of Reynolds, as well as his company, wrote J. J. Chauncey, of Lubbock, Tex., the following letter:

"Mr. J. G. Reynolds was in to see us this morning with reference to the foreclosure suit now pending against him in behalf of the Volunteer State Life Insurance Company of Chattanooga, Tennessee. Mr. Reynolds is desirous of the Volunteer giving him more time in order to permit him to complete arrangements already made to re-finance his loan on the property involved. In order to help Mr. Reynolds perfect his plans along this line, the undersigned, as agent for the Volunteer State Life Insurance Company, has agreed to withhold taking judgment against Mr. Reynolds in the pending suit until the extreme latter part of the present term of the 42nd District Court, which is sometime in the middle part of February, and in consideration of this concession, Mr. Reynolds has agreed that we might hold in our files the proceeds of the draft heretofore paid in liquidation of a fire loss to the house formerly located on Mr. Reynolds' place. And in the event of Mr. Reynolds being able to re-finance, the proceeds of the said draft are to be credited on the total amount due the Volunteer.

"In the event Mr. Reynolds is unable to re-finance his loan and we are forced to foreclose our lien, then we will retain out of the proceeds of said draft, the sum of $1,060.59, the balance to be remitted to you. The Volunteer, of course, being relegated to the property itself for the balance of its money.

"Yours very truly,

"Jas. F. Holliday, Loan Agent, The Volunteer State Life Insurance Company."

The above letter was carried by Mr. Reynolds in person to the addressee at Lubbock. No response to the negotiations forthwith coming from Mr. Reynolds, the attorneys for the insurance company addressed to him, on January 7, 1931, the following letter, which he received:

"On January 2nd, we delivered to you a letter addressed to J. J. Chauncey, to the effect that we, as attorneys for The Volunteer State Life Insurance Company, would withhold taking judgment in the case pending in the 42nd District Court here, in which said Insurance Company is the plaintiff, and J. G. Reynolds, et al., are the defendants, same being a lien upon the farm now occupied by you in Lubbock County. In consideration of this you were to permit us to hold the entire proceeds of the draft issued in full settlement of the fire loss to your house and household furniture located upon said farm pending such time as you would be able to refinance the loan now existing against your property. We specifically agreed that we would withhold taking said judgment until the latter part of the present term of District Court, which would be in February.

"You have failed to live up to your agreement in that no draft properly indorsed by

yourself and Mr. Chauncey has been delivered to us, and we must, therefore, advise you that unless the proceeds of said draft are in our hands by Monday, January 12, 1931, we shall enter a judgment in the case pending here on that date and proceed to sell the property. You know, of course, that if we take this action the sale will be held on the first Tuesday in March, 1931.

"Yours very truly,

"Davidson, Doss & McMahon

"By T. J. McMahon."

On receipt of the above letter Reynolds consulted his attorney, who, upon ascertaining that no process had in fact been served on Reynolds up to that time, advised him, in substance, to "go home and go to sleep. If you have never been served they can do nothing."

The above letter warned Reynolds a judgment would be taken against him on January 12, 1931, and in February he learned from the advertisements in the newspaper that the judgment had been taken, and that his land would be sold thereunder March 3, 1931. He discussed with the sheriff this prospective sale, according to his testimony, "five, six or ten days" before the same occurred. Reynolds testified he did not receive, through the mail, personal notice of the sale given by the sheriff, but that his wife did, and that she at the time read her notice to him. He also testified that the citation in the original suit served on her was also read to him, as well as the advertisements in the newspaper, of which he was a regular subscriber.

In the study of this record we readily reach the conclusion that the plaintiff presents in the instant suit a meritorious defense to the cause of action asserted in suit No. 8723–A. The defense arises out of an alleged usurious contract, evidenced by the notes and deeds of trust, originally executed by Reynolds to the Southern Mortgage Company. This phase of the case is, therefore, determined in favor of the plaintiff. In the next place the judgment of foreclosure in said suit (cause No. 8723–A) was taken without personal service of process on Reynolds, or any appearance by him in that suit.

▪■■ Notwithstanding these definite conclusions, there are, we think, insuperable legal obstacles to the plaintiff's right of recovery in the instant suit, or to have the judgment of the trial court reversed. It will be borne in mind that this is an equitable proceeding; a bill of review. In other words, Reynolds seeks, through the medium of the intervention of equity, to set aside the judgment for debt and foreclosure of lien theretofore rendered against him, and he seeks to do this on the theory that the trial court had no jurisdiction of his person by reason of the fact that he had never been served with process in the original suit. Ordinarily, under certain state of facts, and in a proper proceeding, the proposition would be sound, but exceptional and controlling facts disclosed by this record require the application of a different rule.

The original suit, No. 8723–A, was based upon an amount far in excess of $1,000, and also sought to foreclose a lien upon real estate. The district court's potential jurisdiction to determine the issues in such a case is obvious. The appellant Reynolds knew the suit was pending against him, and he was not only warned that a judgment would be taken therein on January 12, 1931, but he thereafter learned that it was so taken, and such information was acquired in time for him to have made a motion for a new trial, or to set the judgment aside, at the same term of court, and appeal therefrom in the event of an adverse ruling. He had a still greater period of time in which to prosecute an appeal by writ of error to the appellate court, and thereby set aside the judgment, which he now attempts to attack in this proceeding in equity.

Under such circumstances we understand it has long been a well-established rule that before a litigant is entitled to resort to the equitable remedies of bill of review or injunction for relief against a judgment, he must allege and prove, preliminary thereto, that he has not failed to resort to legal remedies available to him. In other words, it is imperative under such circumstances that the litigant first exhaust legal remedies, or show that they are not available or adequate. Bryorly v. Clark, 48 Tex. 345; Hamblin v. Knight, 81 Tex. 351, 16 S. W. 1082, 26 Am. St. Rep. 818; Duncan v. Smith Bros. Grain Co., 113 Tex. 555, 260 S. W. 1027, 1029; Southern Surety Co. v. Texas Oil Clearing House et al. (Tex. Com. App.) 281 S. W. 1045; Pass v. Ray (Tex. Civ. App.) 44 S. W.(2d) 470; Texas-Mexican Ry. Co. v. Wright, 88 Tex. 346, 31 S. W. 613, 31 L. R. A. 200; Svoboda et al. v. Alexander (Tex. Com. App.) 3 S.W.(2d) 423; Hansen v. Bacher (Tex. Civ. App.) 295 S. W. 316; Sherman Steam-Laundry Co. v. Carter, 24 Tex. Civ. App. 533, 60 S. W. 328; Hernandez v. Alamo Motor Co. (Tex. Civ. App.) 299 S. W. 272; Home Benevolent Ass'n v. Boswell (Tex. Civ. App.) 268 S. W. 979; A. B. Richards Med.

Co., Inc., v. Johnson (Tex. Civ. App.) 267 S. W. 1067 (writ ref.).

In the early case of Bryorly v. Clark, supra, Bryorly sought to enjoin a judgment taken against him by Clark on the ground that the same was obtained through fraud. This equitable relief was sought by petition filed during the term of court at which the judgment under attack was rendered. Our Supreme Court, through Judge Gould, in disposing of the legal question arising upon the facts, used this language: "The present application is peculiar, in that it appears to have been made during the term; and the question is presented as to the right of a party to appeal to equity for a new trial, when the remedy by motion was still open, unless, at least, he states a sufficient excuse for failing to resort to the more simple and legal remedy. It seems clear, both on principle and authority, that if it were still in his power to move for a new trial in the court that tried the cause, he could only be justified, if at all, in resorting to a separate suit, in the nature of a bill in equity, by showing that under the circumstances the remedy by motion was inadequate or uncertain."

The above case of Hamblin v. Knight was one in which Hamblin sought to enjoin the collection of a judgment against him for money in favor of Knight. *The injunction proceeding was brought during the term of court at which the judgment was rendered,* and it was the contention that the trial court, in rendering the judgment, had no jurisdiction over Hamblin because he had never been served with citation, nor entered his appearance in the cause. Hamblin did not live in Milam county, and did not know that a judgment had been rendered against him until more than two days after it was rendered. The Supreme Court, through Judge Henry, disposed of appellant's contentions in this language: "In the view taken by us of the cause, the only question that it becomes necessary to consider is, was the proceeding by a suit for an injunction proper when the remedy by a motion for a new trial was still open? The question was decided by this court in the case of Bryorly v. Clark. * * * *"

The opinion then quotes at length from the Bryorly Case, and expresses its ultimate conclusion in this language: "In this case nothing was alleged by the plaintiff tending to show that his remedy by a motion for a new trial was not adequate. His petition excused his omission to seek that remedy,

by alleging that the term of the court had adjourned before he could apply for relief, after being informed that the judgment had been rendered. If he had proved that allegation, this suit would have been proper."

A more recent case applicable to the facts of this one is that of Duncan v. Smith Bros. Grain Co., supra. The following excerpt from that opinion sufficiently indicates the facts there involved, the holding of the Supreme Court, and the applicability of the opinion to the case in hand. "The judgment which appellant Duncan here seeks to vacate recites due and legal service on him and is on its face apparently valid, and hence not subject to collateral attack. In order to enjoin execution of this judgment and have same set aside, it was necessary for him to show that judgment was rendered against him without any fault on his part. To do this he must show that he is not liable for the debt for which judgment was rendered; that he was not served with citation as required by law, or, if served, that he was not at fault in failing to answer the suit of appellees; *that he did not know of the judgment against him in time to have moved for a new trial in the court in which same was rendered, or, if he did know of such judgment, that he had some good and valid reason for not pursuing his legal remedy.* This is a proceeding in equity. If he had a full and complete remedy at law, of which he failed to avail himself, he could not seek equitable relief, without showing some good reason for such failure." (Italics ours.)

In that case the court held that Duncan knew the judgment was rendered in time to have applied for a new trial before the close of the term, and that he failed to excuse himself for not so doing; citing Coffee v. Ball, 49 Tex. 16, and Hamblin v. Knight, supra.

Another opinion quite directly in point is that of Pass v. Ray (Tex. Civ. App.) 44 S.W. (2d) 470, 471. Pass filed suit in Dallas county against Ray, a resident of Eastland county, on a promissory note and to foreclose a chattel mortgage lien. Ray filed a plea of privilege to be sued in Eastland county. A motion by plaintiff to dismiss the plea of privilege was sustained by the court without notice to the defendant. Ray learned during that term (July) of court that the plea of privilege had been dismissed, but took no action during the term to have the judgment of dismissal set aside. At the following October term, however, he filed a motion or bill of review to set aside the order entered at

the previous July term dismissing his plea of privilege and to have the same reinstated and the cause transferred to Eastland county. After hearing the evidence in support of the motion, the trial court sustained the same and set aside the order previously made dismissing the plea of privilege, and transferred the case to Eastland county. ·Pass appealed, and the court, after finding that the plaintiff did not file any controverting affidavit to the plea of privilege, and that the trial court was, therefore, not authorized to enter the judgment dismissing the plea of privilege, pointed out the fact that the defendant Ray made no effort during the July term of court to have the judgment dismissing the plea of privilege set aside, although he knew it had been entered in time for him to have done so, but permitted it to become final. In denying Ray any relief, thus sought at a subsequent term of court, the Court of Civil Appeals said: "If we construe the appellee's motion for new trial sufficient as a bill of review, as was done in the case of Galbraith v. Bishop (Tex. Com. App.) 287 S. W. 1087, then we have a direct attack on the judgment entered at the previous term of court. However, a bill of review to set aside a judgment entered at a previous term of court is an equitable proceeding, and the burden is on the petitioner to show that he has exhausted his legal remedy before resorting to equity. *The general rule is that, where a judgment entered against a defendant is either voidable or void by reason of lack of jurisdiction over the person of the defendant, and not for lack of potential jurisdiction over the subject-matter because of the amount in controversy or the particular kind of action, and the defendant learns that such judgment has been entered against him in time to file a motion for new trial and to appeal the case, but fails to do so, he is not entitled to invoke the equity jurisdiction of the court to set the judgment aside by a bill of review or by injunction.*" (Italics ours.) (Citing many authorities which we think in point here.)

The opinion in Southern Surety Co. v. Texas Oil Clearing House et al., by the Commission of Appeals, and adopted by the Supreme Court, 281 S. W. 1045, 1047, is in point, and from it we take the following: "But the distinction between void and voidable judgments is not material to the decision of the question before us, since, whether the present judgment is void or voidable, the plaintiff in error is not entitled to set the same aside, or, what is the same thing, to perpetually enjoin its enforcement, without bringing itself within the rules of equity applicable to such proceedings. *It is clear from the record that plaintiff in error knew of the rendition of the present judgment, and had ample time to have proceeded by motion for new trial or by appeal or writ of error to set it aside.* Having thus at its disposal the option of at least three distinct legal remedies, it will not be permitted to neglect the exercise of such remedies and to resort to a court of equity to stay the enforcement of the law's decree. Its want of diligence is fatal." (Italics ours.)

This opinion will not be further extended by specific references to the authorities above cited and relied upon for the correctness of the conclusions expressed in this opinion.·

 From what has been said it is obvious that we do not deem it material or controlling in the disposition of this appeal whether the judgment of foreclosure originally entered against Reynolds be regarded as void or voidable. In either case, he would not be permitted to set that judgment aside without bringing himself within the rules of law or equity applicable for such relief. Since the district court had potential jurisdiction to render the judgment, and since that judgment recites service on Reynolds and otherwise appears regular on its face, we are inclined to the view that the judgment is at most voidable. The recital of service amounts to a passport for the judgment until it is arrested by some appropriate direct proceeding. As also said in the opinion of Southern Surety Co. v. Texas Oil Clearing House: "There has been much laxity in the opinions with respect to the use of the terms 'void' and 'voidable' as applied to judgments. Strictly speaking, a void judgment is one which has no legal force or effect whatever. It is an absolute nullity and such invalidity may be asserted by any person whose rights are affected, at any time and at any place. It need not be attacked directly, but may be attacked collaterally whenever and wherever it is interposed. Usually it carries the evidence of its invalidity upon its face, while a voidable judgment is one apparently valid, but in truth wanting in *some* material respect; in other words, one that is erroneous. *Such vice may be the want of jurisdiction over the person or other similar fundamental deficiency,* but which vice does not affirmatively appear upon the face of the judgment." (Italics ours.)

Stated somewhat differently, but perhaps meaning the same, our Supreme Court, in the opinion in Crawford v. McDonald, 88 Tex. 626, 632, 33 S. W. 325, 328, considering the effect of a judgment taken without personal

service on the defendant, used this language: "Where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, be allowed to show by evidence dehors the record that the judgment was rendered without any service whatever upon him. Logically, the judgment is, in fact, void, but on grounds of public policy the courts, in order to protect the property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore, for all practical purposes, in such collateral attack, the judgment is held valid."

In the case of Texas-Mexican Ry. Co. v. Wright, 88 Tex. 346, 31 S. W. 613, 31 L. R. A. 200, our Supreme Court held that an injunction will not issue to enjoin execution on a void judgment, which could have been reviewed by certiorari. See, also, Pass v. Ray, supra.

■ Certainly, the original judgment of foreclosure is not subject to a collateral attack by Reynolds. Had he raised the question of the lack of service of citation upon him in a motion for a new trial, and prosecuted appeal to this court, in case of an adverse ruling on the motion, or, had he brought the judgment to this court for review by writ of error, there could be no doubt of the efficacy of either of such legal remedies. From the testimony in this record, evidently the transcript, either by appeal or writ of error, if properly prepared, would have contained no citation and officer's return even purporting to evidence service on Reynolds. In that situation, the judgment of the trial court would inevitably have been reversed. The case would have been in all respects like that of Head et al. v. Texas State Bank, 16 S.W. (2d) 298, passed on by this court, and in which the judgment of the trial court was reversed. It was there held that on appeal the recital of service in a default judgment which affirmatively *showed want of appearance upon the part of the defendant was insufficient alone to show jurisdiction in the court* to render judgment. In that case there was in the transcript no citation and return showing service on the defendant, or any agreement authorizing its omission. There was nothing in the record, by pleading or otherwise, to evidence any waiver or entry of appearance on the part of the defendant. It was there pointed out that article 2278, Vernon's Ann. Civ. St., provides that unless the *pleadings* or

the *judgment shows an appearance* of the defendant in person, or by attorney, the citation and return thereon must be copied into the transcript, and that these essentials cannot be supplied by the fact recitals in the judgment that the defendant was duly served with citation. Upon this proposition we cite the recent case of Peterson & Tvrdik v. Mueller-Huber Grain Co. (Tex. Civ. App.) 58 S.W.(2d) 890, 892, and the. numerous authorities therein.

During the progress of the trial, and after appellee insurance company presented a motion for an instructed verdict on February 15, the appellant the following day, with permission of the court, filed a trial amendment containing two paragraphs. In the first he sought to excuse himself from negligence in not filing "any motion for a new trial, or to set the judgment aside" on the ground of his attorney's misleading advice; and in the second paragraph he sought to excuse himself from negligence in failing to prosecute an appeal or error from the judgment *"for the reason that said judgment upon its face was valid, that the citation showing that this plaintiff was served with the citation was not in the papers, or in the record, and that it was necessary for such fact to be established by proof outside of the record."* (Italics ours.)

The language thus quoted from the appellant's pleading set out, in our judgment, the strength of the appellant's position had he appealed or prosecuted error. On the authority of Head v. Bank, supra, and Peterson v. Mueller, supra, and the authorities therein cited, the transcript would have of necessity been void of any citation and return showing service on the appellant. Neither would there have been any agreement for its omission, or any showing of waiver, appearance by pleading or otherwise. As said in the case last cited, "Where the record [on appeal] fails affirmatively to show jurisdiction of the person of the defendant, a judgment by default, on direct appeal, is fundamentally erroneous." Obviously, the remedy by writ of error was available at the time appellant's property was sold March 3, 1931, at the time he was dispossessed under the writ of possession March 24, 1931, and long subsequent thereto; that is, at any time within six months from the rendition of the judgment, January 12, 1931. Article 2255, Vernon's Ann. Civ. St. The appellant shows no ground, or legal excuse, for not pursuing this remedy, since it was available to him long after he was dispossessed and must have discovered

and felt the effect of the erroneous advice alleged to have been given by his attorney.

■■ We return to the other phase of the appellant's fifth contention, viz., that he showed a good and valid excuse for not making a motion for a new trial, or to set the judgment aside, in that he obtained and relied upon an attorney's advice to the effect "that it was not necessary for him to take any action to set aside said judgment and that the same was void." The appellant cites no authority to support this contention. It will be considered in the light of the undisputed facts pointed out, and especially the fact that he had knowledge of the judgment before the expiration of the term of court at which it was rendered, etc.

It is the appellee's counter contention that the appellant, being informed of the suit, judgment therein, order of sale, and sale of his property, etc., fails to excuse himself from pursuing a legal remedy by reliance on the alleged erroneous advice. We believe the appellee's contention states a sound proposition of law. Generally speaking, ignorance of the law excuses no one. Further, the relationship of attorney and client is that of principal and agent, and the negligence of the agent is imputed to the principal. Courts of equity seem never to have sanctioned the setting aside of judgments on the ground of negligence or inadvertence of an attorney. A different rule might make the life of many judgments very precarious, and too unstable for the public good. The rule that equity will not relieve against a judgment attributable to negligence and defaults of one's attorney is well stated in 15 R. C. L. p. 756, § 209, as follows: "The negligence of an attorney is considered the negligence of his client, and the negligence, mistakes and unskillfulness of an attorney are not in themselves considered grounds sufficient to authorize an injunction to issue to restrain the enforcement of a judgment at law resulting therefrom * * * nor is erroneous advice of an attorney such a mistake as will entitle the party to relief from a judgment, and hence where a party fails to appear and defend an action on the advice or counsel that no judgment will be taken against him, equity will not relieve against a judgment taken by default."

The rule was followed in a very early case by our Supreme Court in a brief opinion in Scrivner v. Malone, 30 Tex. 773, 774, as follows:

"The plaintiff below obtained judgment upon an instrument in writing by default. The defendant requested the judgment to be set aside, because he had engaged an attorney at law to defend the cause, and the attorney neglected his duty.

"If it had appeared that the plaintiff was directly or indirectly implicated in causing the attorney so selected to violate his obligation, we should be bound to set aside the judgment. But as the plaintiff should not be delayed in consequence of the default of the defendant or his agent, the judgment must be affirmed. It would be a precedent pregnant with mischief, delay, and injustice to suitors in court, if a judgment should be set aside for causes like the one under consideration.

"If the attorney has neglected his duty, the defendant has recourse against him. The judgment is affirmed."

In the recent case of Smith v. Ferrell et al. (Tex. Com. App.) 44 S.W.(2d) 962, 966, opinion approved by the Supreme Court, the defendant had personal service and an opportunity to defend the suit, but did not because he expected his attorney to attend to the matter. The attorney neglected to do so, and judgment went against the defendant. It was there said: "If the judgments of Courts were liable to be set aside, and new trials granted on such grounds as these, there would, indeed, never be an end of litigation. It has been well said, that, 'If mistakes in practice, or inadvertence furnished reason for a new trial, it would encourage litigation and reward ignorance and carelessness at the expense of the other party.' (6 Rep. 9). And, therefore, the law in such cases wisely acts upon the maxim * * * it is for the public good that there be an end of litigation."

In Ricketts et al. v. Ferguson (Tex. Civ. App.) 64 S.W.(2d) 416, 417, it is said: "In the case at bar, appellee cannot assert, and escape the consequences that, in pursuing the course he pursued in the justice court, he was depending upon his attorney, *for the law attributes to him the negligence or mistake of his attorney.*" (Italics ours.)

Clayton v. Stephenson (Tex. Civ. App.) 254 S. W. 507, 508 (writ of error refused) is an opinion especially in point. Briefly, Stevenson sued Bailey and later took judgment against him and the sureties upon a replevy bond, Clayton being a surety thereon. Clayton attempted to enjoin the execution of the judgment as to him on the ground that he himself owned the automobile levied on by attachment as the property of Bailey. As grounds for the injunction, he set up that when the automobile was seized under attachment he employed an attorney for the purpose of establishing his title to the auto-

mobile, and that the attorney, through mistake, prepared and had him sign a replevy bond instead of claimant's oath and bond, etc. The court, after stating the general rule that a party to a suit may not obtain an injunction to restrain the execution of a judgment in a suit unless he shows a good excuse for not seeking such relief in the original case in which the judgment was rendered either by a motion for a new trial and appeal or writ of error, used the following language in discussing a litigant's right to equitable relief when he sustains injury or loss through negligence and erroneous advice of counsel: "In this case the petition for injunction does not attempt to show why plaintiff did not seek direct relief in the original proceeding, and present therein, either on original hearing, motion for new trial, or appeal, the matters now urged in opposition to the rendition of said judgment. The only excuse now offered for failure to take any such action is the suggestion of mistake or ignorance on the part of the attorneys representing appellant at such time. These facts are not directly alleged but suggested in argument. But relief against judgments cannot be granted on the ground that, as a result of the ignorance, neglect, or mistakes of a litigant's lawyers, his rights were not fully protected in the litigation closed by the judgment."

See, also, Kahl v. Porter (Tex. Civ. App.) 296 S. W. 324, to the same effect. In the light of these authorities the appellant's fifth proposition is overruled.

The foregoing are the controlling questions presented by this appeal. All other assignments and propositions have been considered, and they are either without merit, or become immaterial under the foregoing conclusions.

The able attorneys for the appellant have filed most excellent briefs in the case. The authorities relied upon by them have been carefully considered, but we do not believe they control the disposition of this appeal. Without prolonging this opinion by specific references to the many cases cited by appellant, we think they are distinguishable on the facts from this one. The case of Levy v. Roper, 113 Tex. 356, 256 S. W. 251, 252, is typical, and appellant relies largely on that and similar cases for support of his contentions on this appeal. That case involved a bill of review to set aside a judgment, but there is a fundamental difference between that case and this one. There the widow, Mrs. Roper, and the minor children brought suit to set aside the judgment and sale on the following grounds: "First: That the widow and children of Ward Roper did not appear in person, or by attorney in the suit brought by D. O. Walden, and Second: That they were not served by citation in suit *and had no knowledge of the suit, judgment, or sale until immediately before the filing of this action.*" (Italics ours.) Further on in the opinion, the Supreme Court, in enumerating the findings found to be supported by the testimony, stated this one: "That the widow and children of Ward Roper had no knowledge of Walden's suit until immediately before instituting proceedings to set aside the decree of foreclosure and the sheriff's sale; and *that they were not negligent in failing to learn of same.*" (Italics ours.)

In that case the term of court had expired without Mrs. Roper and the minors acquiring any knowledge of the suit, judgment, etc. It is a situation exactly opposite to that reflected by the instant case. She appears to have acted promptly upon the discovery of the judgment, etc., and by her pleadings and proof brought herself within the rules of equity, entitling her to relief from such a judgment. She acted at a time when there was no legal remedy available to her by motion for a new trial, appeal, or prosecution of writ of error. The failure of the appellant to pursue the adequate legal remedy available to him under the facts of this case, and his having shown no valid excuse for not so doing, distinguishes this case from the line of authorities relied upon by the appellant, and no attempt at further discussion of these authorities will be made.

For the reasons assigned, the judgment of the trial court is affirmed.