**Opinion issued January 29, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00954-CV

———————————

**WANDA JOYCE SMITH, Appellant**

**V.**

**CASEY LENDING, LLC AND TAI PHAN, Appellees**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-49408**

---

## CONCURRING OPINION

This case illustrates a point that Justice Young made for the supreme court in *Mitschke v. Borromeo*, 645 S.W.3d 251, 257 n.11 (Tex. 2022): Sometimes lawyers do not inform the appellate court of all relevant precedents, and as a result a busy appellate court may inadvertently depart from principles of stare decisis.

Justice Young's words deserve to be set out verbatim: "Most such 'violations' [of stare decisis] are presumably inadvertent, as when parties fail to identify binding precedents. Despite lawyers' and judges' best efforts, deviations of that sort are inevitable, especially in busy and large appellate courts." *Id.*

Such a failure in advocacy may have occurred in *Gold v. Gold*, 145 S.W.3d 212 (Tex. 2004) (per curiam), where neither side's merits briefing cited any of the supreme court's precedents on the question whether the appeal once known as writ of error, now called a restricted appeal, is a legal remedy that must be exhausted by a party who assails a judgment by an equitable bill of review. Controlling authority existed, which petitioner was required to disclose (if known) and respondent was incentivized to cite (again, if known). Unfortunately, the briefing left the impression that the supreme court had never considered the question.

Yet the court had done so. The court answered the question more than 100 years earlier in *Weaver v. Vandervanter*, 84 Tex. 691, 19 S.W. 889 (1892), where the court said the opposite of what it said in *Gold*: "There was ample time within which to prosecute a writ of error. Appellant could, therefore, have availed himself of an adequate remedy at law. By virtue of an elementary principle he will not be permitted to maintain this suit in equity." *Id.* at 889. More will be said about this, but the point for now is just that it would have been helpful for the *Gold* briefing to remind the court of what it wrote 112 years earlier in *Weaver*.

Nor did the briefing mention the supreme court's opinions in *Reynolds v. Volunteer State Life Insurance Co.*, 80 S.W.2d 1087 (Tex. Civ. App.—Eastland 1935, writ ref'd), and *Birge v. Conwell*, 105 S.W.2d 407 (Tex. Civ. App.—Amarillo 1937, writ ref'd). Writ-refused cases after June 14, 1927, are of course supreme court decisions. *See, e.g.*, *Latham v. Sec. Ins. Co. of Hartford*, 491 S.W.2d 100, 102 (Tex. 1972). As we shall see, those supreme court opinions handled the issue just the way *Weaver* handled it. But when controlling precedents stand alone in a forest and nobody cites them, how can the reader hear about them?

## I.

The final judgment was signed on October 17, 2017. It went unassailed by motion for new trial, ordinary appeal, or a restricted appeal (f/k/a appeal by writ of error). It was assailed a year and a half later in a bill of review, where appellant Wanda Smith says that she received a copy of the judgment in the mail "in April 2018, six months after its entry." She had time to file a restricted appeal, which comes with a six-month deadline. TEX. R. APP. P. 26.1(c). In fact, she would have had enough time to do so even if the judgment had come in the mail on the last day of April 2018, because that would still lie within the 15-day grace period provided by Rule of Appellate Procedure 26.3, a period that applies to restricted appeals. *Stancu v. S. Methodist Univ.*, No. 05-21-00666-CV, 2022 WL 2763354, at *2 (Tex.

3

App.—Dallas July 15, 2022, pet. denied) (mem. op.); *Wray v. Papp*, 434 S.W.3d 297, 299 (Tex. App.—San Antonio 2014, no pet.).

With Smith's own version of events confirming that she had time to bring a restricted appeal, the question becomes whether she alleged and proved a reason for failing to do so. The answer is No. She thus comes within the holding in *Weaver* that such a movant "will not be permitted" to pursue a bill of review:

> The present suit is a proceeding in equity instituted in the same court October 11, 1889, by the appellant, in the nature of a bill of review. . . .
>
> . . . If the judgment was erroneous, we see no reason why the jurisdiction of the appellate court might not have been invoked to set it aside. The appellant alleges that he was deprived of an appeal by the negligence of his attorney; but he *urges no reason whatever for failing* to resort to the cumulative remedy of the writ of error. The judgment was entered in March. This proceeding was begun in the succeeding October. *There was ample time* within which to prosecute a writ of error. Appellant could, therefore, have availed himself of an adequate remedy at law. By virtue of an elementary principle he will not be permitted to maintain this suit in equity.

*Weaver*, 19 S.W. at 889 (emphasis added).

Just as was true of Mr. W.M. Weaver back in 1892, Smith "urges no reason whatever for failing to resort to" the remedy of a restricted appeal. That unexplained failure foreclosed relief by bill of review for Mr. Weaver, and stare decisis ought to mean treating similarly situated litigants in a similar fashion.

The same point can be made about the supreme court's decision in *Reynolds*, but before going further, it may be useful to discuss the policy rationales beneath

this area of law.  Those policy concerns show that *Weaver* and *Reynolds* are not just precedents, but precedents built on solid reasons.

## II.

Start with the finality of judgments.  This policy has led the supreme court to constrain the bill of review with vigorous language:

- **<u>Stringent</u>** – "We have long recognized the importance of according finality to judgments, and we have held courts to stringent bill of review standards to protect that policy favoring finality."  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 510 (Tex. 2010).

- **<u>Narrow</u>** – "The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point."  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

- **<u>Extreme jealousy</u>** – "Such bills seeking relief from final judgments, solemnly rendered in the due and ordinary course of the administration of justice by courts of competent jurisdiction, are always watched by courts of equity with extreme jealousy, and the grounds upon which interference will be allowed are, confessedly, narrow and restricted." *Johnson v. Templeton*, 60 Tex. 238, 239 (1883).

It is no exaggeration to say that this policy concern about the finality of judgment has roots going back at least as far as *Goss v. McClaren*, 17 Tex. 107, 120–21 (1856), a case that winning counsel cited to the court in *Weaver*.  *See* 84 Tex. at 692.

One can see this policy's effects not only in cases involving a bill of review, but also in cases where an injunction was sought to stop a judgment's enforcement. In the early years of Texas law, litigants would often fight a prior judgment with a request for an injunction and a bill of review.  In *Bryorly v. Clark*, 48 Tex. 345, 350

5

(1877), a litigant sought both injunctive relief and an order setting aside a prior judgment that he had failed to pursue by motion for new trial. Had he filed a motion for new trial, he either would have prevailed or would have had the right to appeal; yet he did not. *Id.* at 354. The supreme court barred resort to equitable relief because the court saw "no excuse for resorting to the circuitous remedy of a separate suit." *Id*. The court reached a similar conclusion in *Hamblin v. Knight*, 81 Tex. 351, 16 S.W. 1082, 1082–83 (1891), and *Duncan v. Smith Bros. Grain Co.*, 113 Tex. 555, 260 S.W. 1027, 1030 (1924).

This exhaustion of remedies principle applies to any legal remedy that assails a judgment—be it a motion for new trial, an ordinary appeal, a writ of error appeal, or an appeal by writ of certiorari. *See Galveston, H. & S.A. Ry. Co. v. Ware*, 74 Tex. 47, 11 S.W. 918, 919 (1889) (injunction barred by failure to seek certiorari: "We are of opinion, however, that the general rule of equity should apply; and that if the defendant in the void judgment has had an opportunity to avail himself of a legal remedy to vacate it, and has neglected to make use of it, relief by injunction should be denied"). If such a legal remedy goes unused, the finality of judgments will carry the day unless the movant affirmatively shows an excuse for that failure.

Hence, the 1892 decision in *Weaver* was not an aberration or stateless nomad. It grew out of other supreme court pronouncements, such as *Goss* (1856), *Bryorly*

6

(1877), *Ware* (1889), and *Hamblin* (1891). Were any of these cases cited in the *Gold*

briefing? No. Every pre-*Gold* case just listed here went unmentioned.

III.

After these nineteenth century cases, it cannot have surprised anyone when

the twentieth century supreme court rejected a bill of review in *Reynolds v. Volunteer*

*State Life Insurance Co.* There the appellant had the time to pursue a writ of error

appeal but failed to do so and gave no explanation for the failure. That was fatal:

> The appellant Reynolds knew the suit was pending against him, and he was not only warned that a judgment would be taken therein on January 12, 1931, but he thereafter learned that it was so taken, and such information was acquired in time for him to have made a motion for a new trial, or to set the judgment aside, at the same term of court, and appeal therefrom in the event of an adverse ruling. *He had a still greater period of time in which to prosecute an appeal by writ of error* to the appellate court, and thereby set aside the judgment, which he now attempts to attack in this proceeding in equity.
>
> Under such circumstances we understand it has long been a well-established rule that before a litigant is entitled to resort to the equitable remedies of bill of review or injunction for relief against a judgment, he must allege and prove, preliminary thereto, that he has not failed to resort to legal remedies available to him. In other words, it is imperative under such circumstances that the litigant first exhaust legal remedies, or show that they are not available or adequate.

*Reynolds*, 80 S.W.2d at 1090 (emphasis added). To back up its statement about the

"well-established rule," *Reynolds* examined three prior supreme court decisions. *See*

*id.* at 1091. It ended with Judge Ocie Speer's opinion in *Southern Surety Co. v. Texas*

7

*Oil Clearing House*, 281 S.W. 1045 (Tex. Comm'n App. 1926, judgm't adopted), which applied the same rule. *See* 80 S.W.2d at 1092.

Two years after *Reynolds*, the supreme court rejected a bill of review in *Birge v. Conwell*, and it again referred to what was then called an appeal by writ of error: "The bill of review is an equitable remedy and cannot be used to take the place of a motion for new trial, appeal, or *writ of error*." *Birge*, 105 S.W.2d at 408 (emphasis added). "It has never been the law that one who is negligent in the matter of filing and urging a motion for a new trial or in perfecting an appeal or writ of error may avoid the consequences through the medium of a bill of review." *Id.* at 408–09.

Thus, by 1937 the supreme court had repeatedly pronounced and repeatedly held that the unexplained failure to pursue a writ of error appeal bars resort to a bill of review. Did anybody mention any of these authorities in the briefing in *Gold*? Alas, no.

IV.

Fast forward to the end of the twentieth century, and one will find that the high court never questioned, reexamined, or overruled *Weaver*, *Reynolds*, or *Birge*. To the contrary, as the century drew to a close and the amended Rules of Appellate Procedure arrived in 1997, lawyers and lower courts universally understood that if a party could pursue appeal by writ of error, the party had to exhaust that remedy or allege and prove the reason for failing to do so. This fact is readily established.

When serving on the Second Court, Justice David Keltner once faced a bill of review plaintiff who could have "appealed to this court on application for writ of error within six months from the signing of the judgment," but failed to do so. *Steward v. Steward*, 734 S.W.2d 432, 434 (Tex. App.—Fort Worth 1987, no writ) (op. on reh'g). He explained that this failure cost her the case: "Instead, Jane chose the bill of review. In so doing she undertook a much greater burden than in a regular appeal or an appeal by writ of error. A bill of review is a different sort of creature." *Id.* "As a result, we hold that the facts alleged in Jane's petition precluded her from proceeding on a petition for bill of review because she failed to state facts which would excuse her failure to proceed by appeal or writ of error." *Id.* at 436.

Justice Keltner's view was shared by the Twelfth Court: "First National had six months after the default judgment was rendered in which to appeal by writ of error to the Court of Appeals. Instead, First National chose to wait six months and file this bill of review. Because First National failed to exhaust the available legal remedies to set aside the default judgment, it is not entitled to a bill of review to achieve the same result." *Nat'l Bank of Tex. v. First Nat'l Bank of Round Rock*, 682 S.W.2d 366, 369 (Tex. App.—Tyler 1984, no writ).

Justice Keltner's view appeared in what was long considered a leading treatise, perhaps the leading treatise, on Texas procedure:

> The complainant must allege and prove that he exercised due diligence
> to avail himself of all adequate legal remedies against the former

judgment, and that at the time he files the bill of review there remains no such adequate legal remedy still available. A bill of review is not a mere alternative of review on motion for new trial or upon appeal, and it may therefore be successfully urged only when there remains no other method of assailing the judgment. A person is charged with knowledge of all facts which he could have discovered by due diligence, and one who claims ignorance of an adverse judgment for a period of time after its rendition must justify his lack of knowledge. From the date he learns of the decree, or by the exercise of due diligence would have learned of it, the complainant must seize upon all legal remedies still available, including motion for new trial, appeal, or writ of error. . . .

4 R. McDonald, *Texas Civil Practice in District and County Courts* 329, § 18.27.6 (1971 ed.) (quoted in *Johnson v. Johnson*, 476 S.W.2d 954, 955 (Tex. Civ. App.— Houston [1st Dist.] 1972, no writ)).

This same view was echoed by the Eleventh Court in 1963, which recalled its 1935 writ refused opinion in *Reynolds*:

For six months after June 23, 1961, appellant had the legal remedy of appeal by writ of error. If the judgment on its face, or as shown by the judgment roll, was void, as appellant contends, his available legal remedy of appeal by writ of error was adequate and effective. In *Reynolds v. Volunteer State Life Insurance Company*, the insurance company obtained a default judgment against Reynolds. Reynolds learned thereof within six months but did not seek a writ of error. We held that to entitle a litigant to a bill of review he must allege and prove that he has exhausted all adequate legal remedies available to him. The legal remedy of a writ of error was available to appellant. Therefore, he could not allege or prove that essential of a bill of review. We are forced to the conclusion that appellant did not allege facts essential to a bill of review and that the court did not err in refusing the bill of review without hearing evidence thereon.

*Moore v. Mathis*, 369 S.W.2d 450, 454 (Tex. Civ. App.—Eastland 1963, writ ref'd n.r.e.) (internal citation omitted). The Eleventh Court then affirmed the ruling by

10

district judge Clarence Guittard, whose career and mastery of Texas procedure need no elaboration.

This was also the view of Justice Norvell and the Fourth Court: "[T]hey were clearly barred from obtaining equitable relief as they had a clear and adequate remedy at law by way of writ of error." *Drake v. First Nat'l Bank, Mercedes*, 254 S.W.2d 230, 232 (Tex. Civ. App.—San Antonio 1952, no writ).

One could go on, but these authorities prove the point. As the twentieth century ended, this view—that the exhaustion requirement for a bill of review extends to the 6-month appeal known as writ of error—reigned without a rival. What began in *Weaver* and *Reynolds* became a Lone Star stampede down through the years, from Judge Speer to Justice Norvell to Justice Keltner and into a leading treatise on Texas civil procedure.[1]

Might a reader of the *Gold* briefing have wanted to know any of this? Surely the decisional process would have benefited.

---

[1] *See, e.g.*, *Rundle v. Comm'n for Lawyer Discipline*, 1 S.W.3d 209, 218 (Tex. App.— Amarillo 1999, no pet.) ("Rundle was required to pursue a writ of error and exhaust that remedy before he could pursue a bill of review."); *Hesser v. Hesser*, 842 S.W.2d 759, 766 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("Ms. Hesser should have filed a writ of error."); *Davis v. Davis*, No. A14-88-00364-CV, 1989 WL 28389, at *4 (Tex. App.—Houston [14th Dist.] Mar. 30, 1989, no writ) (not designated for publication) ("[B]ill of review was not available to appellant because he failed to exhaust his legal remedy of writ of error before bringing his bill of review action.").

V.

Then came the 1997 amendments to the appellate rules. Did the shift from the writ of error appeal to the restricted appeal materially change the proper analysis? No. The 6-month appeal is still the same basic legal remedy.

The 1997 amendments "renamed and simplified" the writ of error appeal as the restricted appeal. John Hill Cayce Jr., Anne Gardner & Felicia Harris Kyle, *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure*, 49 BAYLOR L. REV. 867, 915–16 (1997). The substance, however, remained the same:

- "The nature of a restricted appeal should be the same as under the former writ-of-error practice." Reagan Wm. Simpson, *A Practitioner's Review of Civil Appeals Under the 1997 Texas Rules of Appellate Procedure*, 29 ST. MARY'S L.J. 595, 641 (1998).

- "The caselaw interpreting appeals by writ of error applies to restricted appeals." W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. 47, 306 (2006).

- "Restricted appeals replace writ of error appeals to the court of appeals. Statutes pertaining to writ of error appeals to the court of appeals apply equally to restricted appeals." TEX. R. APP. P. 30.

The governing statute still uses the old terminology. *See* TEX. CIV. PRAC. & REM. CODE § 51.013 ("In a case in which a writ of error to the court of appeals is allowed, the writ of error may be taken at any time within six months after the date the final judgment is rendered.").

As the supreme court put it, "The writ of error procedure *is now* the restricted appeal procedure in Texas Rules of Appellate Procedure 25.1, 26.1(c), and 30."

12

*Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 849 (Tex. 2004) (emphasis added).

The court has cited a writ of error case as authority for how restricted appeals work, speaking of the two together as "such appeals." *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 573 (Tex. 2006) (per curiam).

To be sure, the writ of error appeal experienced tweaks throughout its history,[2] but nobody ever suggested that any of those tweaks changed its basic character or altered the rule of *Weaver* and *Reynolds*.

Writ of error appeal was always a legal remedy for appealing from a judgment. *See Moore*, 369 S.W.2d at 454 ("Moore's legal remedy was a writ of error."); *Johnson*, 476 S.W.2d at 955 (referring to "legal remedy of writ of error"). The bill of review was never a legal remedy—and never a mode of appeal. *See Clements v. Chajkowski*, 146 Tex. 408, 208 S.W.2d 841, 843 (1948) ("An equitable proceeding in the nature of a bill of review which seeks to vacate previous orders and decrees of a probate court cannot be used as a substitute for an appeal . . . ."). As the supreme court said in *Birge*, "The bill of review is an equitable remedy and cannot be used to

---

[2] *See, e.g.*, *Wichita Valley Ry. Co. v. Carter*, 225 S.W. 592, 592 (Tex. Civ. App.—Fort Worth 1920, no writ) (on 1919 statutory shortening of appellate deadline from one year to six months); *compare* TEX. REV. CIV. STAT. art. 2255 (1925) (six-month deadline) *with* TEX. REV. CIV. STAT. art. 2086 (1911) (twelve-month deadline); *see also* Ben H. Rice III, Recent Case, Lawyer's Lloyds of Tex. v. Webb, 20 TEX. L. REV. 111, 111–12 (1941) (on tweaks of 1939).

take the place of a motion for new trial, appeal, or writ of error." *Birge*, 105 S.W.2d at 408.

In light of all these authorities, we can see that today's restricted appeal retains the basic character of the writ of error appeal. It is a rose with another name. So all the policy underpinnings for *Weaver* and *Reynolds*, such as finality of judgments, remain equally valid after 1997.

VI.

But with these authorities receiving no mention in the merits briefing in *Gold*, it is little wonder that some of the analysis in the *Gold* per curiam opinion deviates from the analysis in *Weaver* and its progeny.

In *Gold*, the party seeking relief filed a bill of review two days before the judgment hit the six-month mark. 145 S.W.3d at 213. The lower courts rejected her bill of review on the ground that she should have exhausted legal remedies by filing a restricted appeal. *Id.* The supreme court disagreed for two reasons. *Id.* The first reason adheres to precedent. The second reason deserves examination.

1. **Reason #1: The *Gold* opinion reaffirmed the traditional view that an unavailable remedy need not be exhausted.**

First, the supreme court stated that the bill of review claimant could not have pursued a restricted appeal, given the state of the record: She "could have met the first three requirements" of a restricted appeal, the court explained, "[b]ut not the fourth." *Id.* With one essential element of a restricted appeal being missing, the

14

remedy was unavailable, so a bill of review was permissible. *Id.* This holding plowed no new ground, because an unavailable appellate remedy by writ of error need not be exhausted. *See Gunn v. Cavanaugh*, 391 S.W.2d 723, 724 (Tex. 1965) (bill of review held proper precisely because writ of error appeal was unavailable); *McClelland v. Moore*, 48 Tex. 355, 361 (1877) (same).

2. **Reason #2: Without addressing *Weaver* or *Reynolds*, the *Gold* opinion called the bill of review "one appellate avenue" that a party may choose as a substitute for the legal remedy of a direct appeal.**

But new ground was plowed by the second rationale. It begins: "[W]e have never held that failing to file a restricted appeal bars a bill of review." *Gold*, 145 S.W.3d at 213. That suggestion appears untenable, unless one sets aside a century of law about writs of error—*i.e.*, erases all events before 1997.

Take *Weaver*. The only thing that Mr. W.M. Weaver wanted was a bill of review, yet he lost because of his unexplained failure to pursue a writ of error. *Weaver*, 19 S.W. at 889.

Take *Reynolds*. Just as with Mr. Weaver, the only thing that Mr. J.G. Reynolds wanted was a bill of review, but he ran into the exact same problem. Mr. Reynolds had enough "time in which to prosecute an appeal by writ of error to the appellate court, and thereby set aside the judgment, which he now attempts to attack in this proceeding in equity." *Reynolds*, 80 S.W.2d at 1090. But he failed to pursue a writ of error, and this unexplained failure cost him the bill of review:

15

> Obviously, *the remedy by writ of error was available* at the time appellant's property was sold March 3, 1931, at the time he was dispossessed under the writ of possession March 24, 1931, and long subsequent thereto; that is, at any time within six months from the rendition of the judgment, January 12, 1931. The appellant shows no ground, or legal excuse, for not pursuing this remedy, since it was available to him long after he was dispossessed . . . .

*Id.* at 1093 (emphasis added) (citation omitted).

Next, the *Gold* opinion reasoned that a litigant should not be faulted for "choosing to appeal by bill of review rather than a restricted appeal." 145 S.W.3d at 214. On this view about "choosing" to "appeal," there is nothing amiss when a party simply "chooses one appellate avenue rather than another." *Id.*

According to the *Gold* opinion, "We have never included a restricted appeal among the 'adequate legal remedies' a bill of review claimant must pursue; we have only applied this rule to motions that could have been filed in the trial court's first proceeding." *Id.* (Mr. Weaver and Mr. Reynolds would disagree.) As I have discussed at length, probably undue length, the supreme court always included this mode of appeal as such a remedy. There is no reason to dwell further on *Weaver*, *Reynolds*, and their roots in earlier cases. What may warrant mention, however, is the part of *Gold* that speaks of "choosing to appeal by bill of review rather than a restricted appeal[.]" *Id.*

The notion of a party "choosing" to "appeal" by bill of review rather than by restricted appeal creates awkward tension with longstanding supreme court doctrine.

16

The court held in *Birge* that "[t]he bill of review is an equitable remedy and *cannot* be used to take the place of a motion for new trial, appeal, or writ of error." *Birge*, 105 S.W.2d at 408 (emphasis added). The court made a similar point a decade later when it again distinguished between a bill of review (equitable) and an appeal (legal), explaining that a party *cannot* substitute one for the other:

> An equitable proceeding in the nature of a bill of review which seeks to vacate previous orders and decrees of a probate court cannot be used as a substitute for an appeal to the district court, and since respondent failed to avail himself of the adequate legal remedy at his disposal, relief under his action to vacate the orders upon equitable grounds was properly denied him.

*Clements*, 208 S.W.2d at 843; *see also Texaco, Inc. v. Cent. Power & Light Co.*, 925 S.W.2d 586, 590 (Tex. 1996) ("Appeal by writ of error is not an equitable proceeding such as bill of review, the object of which is to set aside an unfair judgment. Rather, writ of error is 'but another mode of appeal.'") (quoting *Smith v. Smith*, 544 S.W.2d 121, 122 (Tex. 1976)); *Smith v. Gerlach*, 2 Tex. 424, 426 (1847) (stating that "the writ of error in our practice is but another mode of appeal[.]").

A bill of review is not an appeal; it is a new suit. "This right to bring direct proceedings to vacate and set aside a judgment is not intended to be used as a means of review of its own final judgment by a court, or to correct errors into which it may have fallen. That the judgment is erroneous, as a matter of law, is a ground for an appeal or a writ of error, but it is not ground for setting aside the judgment by a bill

17

of review." *Petty v. Mitchell*, 187 S.W.2d 138, 139 (Tex. Civ. App.—Beaumont 1944, writ ref'd).

Texas law has drawn this same distinction for about as long as we have had bills of review. *See Brownson v. Reynolds*, 77 Tex. 254, 13 S.W. 986, 987 (1890) (rejecting bill of review: "Equity will not interfere when the complainant had a legal remedy, and has failed to avail himself of it.").[3] The restricted appeal is a legal remedy, not an equitable action. *See Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 813 (Tex. 2012) (per curiam) ("Mabon was diligent in pursuing all available legal remedies to challenge the default judgment. Once Mabon learned of the default judgment, it timely filed a restricted appeal . . . ."). This distinction— between the equitable bill of review (a new suit) and the legal remedy of appeal (not a new suit)—rests on sound policy concerns, rooted partly in the law/equity distinction but more fundamentally in the finality of judgments. No such concerns ever led a court to say that a restricted appeal will provoke extreme jealousy.

---

[3]     These pronouncements all fit nicely with the supreme court's action in 1932 in drawing this sharp distinction between a bill of review and an appeal: "A suit in equity to set aside the judgment goes to the very foundation of the judgment, and does not involve a revision of the judgment for errors committed. The functions of such a suit are entirely distinct from the functions of an appeal from the judgment assailed." *Winters Mut. Aid Ass'n Circle No. 2 v. Reddin*, 49 S.W.2d 1095, 1096–97 (Tex. Comm'n App. 1932, holdings approved). Although the supreme court did not adopt the Commission's opinion, it came very close to doing so when it wrote: "We approve the holdings of the Commission of Appeals on the questions discussed in its opinion." *Id.* at 1100.

In appeals, we favor scrutiny of the merits so that the parties, as well as society, can know whether the judgment is correct. *See McLean v. Livingston*, 486 S.W.3d 561, 565 (Tex. 2016) (per curiam) ("Texas favors a policy allowing an appellant the opportunity to cure a procedural defect so that a case may be decided on its merits."); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex. 2000) (Hecht, J., concurring) ("Appellate procedure should not be tricky.").

But by the time of the bill of review stage, matters have materially shifted. It is as though a pawn has been promoted and become a new queen on the chessboard. "Bills of review are intrinsically incongruous with finality, and thus, are not lightly granted." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 230 (Tex. 2015); *see Crouch v. McGaw*, 134 Tex. 633, 138 S.W.2d 94, 96 (1940) ("It is the policy of the law to give finality to judgments of the courts.").

Which takes us back to Justice Wheeler's point in 1856: "[I]t is for the public good that there be an end of litigation." *Goss*, 17 Tex. at 120. Those words were written before the Civil War, but the supreme court kept repeating them in bill of review cases decided throughout the twentieth century. *See State v. Newman*, 237 S.W.2d 417, 420 (Tex. Civ. App.—Austin 1951, writ ref'd); *Brannen v. City of Houston*, 153 S.W.2d 676, 678 (Tex. Civ. App.—Galveston 1941, writ ref'd); *Reynolds*, 80 S.W.2d at 1094; *Ricketts v. Ferguson*, 64 S.W.2d 416, 417 (Tex. Civ. App.—Dallas 1933, writ ref'd).

## VII.

There is no denying the inconsistency between the second rationale in *Gold* and the supreme court's holdings in *Weaver*, *Reynolds*, and *Birge* (plus the doctrinal foundation underpinning the *Weaver* line of cases). The question becomes what to do about it. That question has several conceivable answers, none of them entirely free of difficulty.

First, one could reconcile the two lines of authority by announcing that the restricted appeal is fundamentally different from the writ of error, and that all the pre-1997 cases have become obsolete. But such a claim would be unconvincing, and nobody would believe it.

The restricted appeal and the writ of error differ only slightly. "The only notable change is that the party seeking to bring a restricted appeal must not have timely filed a post-judgment motion, a request for findings of fact or conclusions o[f] law, or a notice of appeal." *L.P.D. v. R.C.*, 959 S.W.2d 728, 729 n.1 (Tex. App.—Austin 1998, pet. denied). Civil Practice and Remedies Code Chapter 51 still speaks of the writ of error, *see* TEX. CIV. PRAC. & REM. CODE § 51.013, and Rule 30 absorbs all such statutes into the law of restricted appeals. *See* TEX. R. APP. P. 30 ("Statutes pertaining to writ of error appeals to the court of appeals apply equally to restricted appeals.").

Hence, the bar has rightly regarded the arrival of the restricted appeal as little more than a name change,[4] which is why Reagan Simpson commented, "The nature of a restricted appeal should be the same as under the former writ-of-error practice." Simpson, 29 ST. MARY'S L.J. at 641. Treating today's restricted appeal as materially different from its predecessor is not a satisfactory option.

Second, one might try the *Shearson/American Express* approach to resolving tension between modern doctrinal developments and an older but on-point decision. That is, "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *In re Smith Barney, Inc.*, 975 S.W.2d 593, 598 (Tex. 1998) (orig. proceeding) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).[5] But the situation here does not present an instance of modern doctrine evolving away from an on-point decision that has fallen out of step with the times. *Cf. State Oil Co. v. Khan*, 522 U.S. 3, 10–22 (1997) (abandoning

---

[4] *See, e.g.*, Wallace B. Jefferson, *New Appellate Rules Update*, in State Bar of Texas, Advanced Personal Injury Law Course at 21 (1998) ("The Names Have Changed"); Pamela E. George, *Rule Changes that Every Lawyer Needs to Know About* Other *than Discovery*, in State Bar of Texas, 22nd Annual Marriage Dissolution Institute at F-2 (1999) ("What we formerly knew as appeal by writ of error is now referred to as a restricted appeal.").

[5] Justice Hecht made this observation in a case where the issue was the validity of a writ-refused decision, namely *H. Rouw Co. v. Railway Express Agency*, 154 S.W.2d 143 (Tex. Civ. App.—El Paso 1941, writ ref'd).

old rule in antitrust law). The doctrine surrounding bill of review practice has stayed the same; so has the public interest in the finality of judgments and ending litigation. The *Shearson/American Express* approach may be tempting but does not fit.

Third, there is the orderliness lesson from *Mitschke v. Borromeo*, namely that stare decisis means following the first precedent. Per *Mitschke*, when conflicting cases come out of a single court, the orderly course is to follow the first one: "Affording *stare decisis* authority to the second case would be tantamount to eliminating *stare decisis* altogether." *Mitschke*, 645 S.W.3d at 257. "For our legal system, the result would not be order and stability, but chaos and unpredictability." *Id.* at 257–58. "The very concept of 'settled principles' would eventually be eroded." *Id.* at 258. "If last-in-time decisions trumped earlier decisions, the public writ large would unfairly bear the consequences of departures from *stare decisis.*" *Id.* at 257 n.11.

However, the orderliness discussion in *Mitschke* involved precedent in the intermediate courts, not in the supreme court. Does orderliness matter more in intermediate courts? That would seem odd, since if stability means following the first-in-time decisions of the intermediate courts, the value in order and stability should surely be magnified when one considers precedents from the highest court. *Mitschke* itself does not answer the question, although its emphasis on predictability ought to carry great weight. The *Mitschke* approach seems attractive.

However, in the aftermath of *Gold*, some lower courts (including this one) have followed *Gold* and have quietly walked away from the *Weaver* line of cases. *See Meat Supply, LLC v. 510 S. Good Latimer, LLC*, No. 04-21-00095-CV, 2022 WL 689071, at \*4 (Tex. App.—San Antonio Mar. 9, 2022, pet. denied) (mem. op.); *Xiaodong Li v. DDX Grp. Inv., LLC*, 404 S.W.3d 58, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Pope v. Pope*, No. 12-09-00188-CV, 2011 WL 1259532, at \*3 (Tex. App.—Tyler Mar. 31, 2011, no pet.) (mem. op.).

Given events since *Gold*, I am reluctantly inclined to do what that per curiam did, in the hope that doing so constitutes the least bad of many miserable choices. *Gold*'s alteration of the exhaustion requirement strikes me as thoroughly unsound, as my instincts put me in the camp with *Weaver*, *Reynolds*, and *Birge*, and in the company of jurists such as Keltner, Norvell, Guittard, and Speer. But when faced with inconsistent decisions from our highest court, I cannot bring myself to deviate from the most recent decision, no matter what my view of whether the briefing there let the court down by failing to disclose controlling precedents.

For these reasons, I agree that the bill of review here should not have been rejected at summary judgment, at least not for the reasons given in Casey Lending's motion. (Tai Phan's papers advance other reasons for defeating the bill of review, such as certain special requirements of the Tax Code, but those reasons were not advanced in Casey Lending's motion and are not before us for review.)

No matter what happens on remand, perhaps this review of how the caselaw came to its present condition may increase the odds that affected lawyers will, on some future date, dig deeply into the exhaustion requirement in Texas bill of review law and supply the supreme court with all the details that it deserves as it plots the wisest future course for all of us.  Texas has a skilled bar, whose members strive to give their "best efforts," *see Mitschke*, 645 S.W.3d at 257 n.11, so if this discussion helps future efforts to be just a bit better, it will have achieved its goal.


David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

Justice Gunn, concurring.